SUSAN S. SIMMONS ET AL. v. F. F. ARNIM ET AL.

No. 2788.  Decided March 20, 1920.

(220 S. W., 66.)

1.—Judgment—Collateral Attack.

In determining the sufficiency of a judgment to sustain against collateral attack title derived from execution sale thereunder, it is immaterial that the judgment was erroneous and voidable. Only entire want of power to render the judgment could make it void.  (P. 319).

2.—Guardian ad Litem—Fee—Taxation of Costs.

The fee allowed a guardian *ad litem* representing minors successful in the litigation is not necessarily taxable against their adversary. (Art. 2035, Rev. Stats.)  Under article 2048, Rev. Stats., the court had power to tax it otherwise, and might tax it against the minors to be paid out of lands recovered for them by the services of the guardian *ad litem*.  (P. 320).

3.—Same—Judgment—Taxation of Costs Against Successful Party—Stating Cause.

The direction of the statute (Rev. Stats. Art. 2048) that the court taxing costs otherwise than against the unsuccessful party, should state in the record the cause therefor, affected merely the manner in which the court's power should be exercised.  Failure to so state in the record was only an irregularity and did not rob the court of its power, nor render such order of taxation void and subject to collateral attack.  (P. 320).

4.—Judgment—Minors—Jurisdiction—Fee of Guardian ad Litem.

Minors made defendants to a suit for recovery of land were thereby brought within the jurisdiction of the court, which extended to taxation against them of a fee for their guardian *ad litem*, and this though they were successful in recovering the land from plaintiff, and the latter had in his petition, consented that the costs be taxed against him though he should be successful.  (Pp. 320-322).

5.—Same.

Plaintiff's offer, in his petition, to have costs of proceeding taxed against him though he prevailed, apparently made under the view that this was a friendly suit to clear title which would not be resisted, did not deprive the court of power to tax against the minor defendants, whose guardian *ad litem* had resisted the suit and recovered the land for them, the fees allowed him for such services. (Pp. 321, 322).

6.—Same.

A judgment rendered against minors, having no permanent guardian, upon a plainly antagonistic claim (here that of their guardian *ad litem* for fees) without their representation by a guardian *ad litem* against such claim was not void. Failure to observe a direction of a statute which had only to do with the manner of exercising the power, not with the power itself, rendered the judgment voidable merely, not void. Montgomery v. Carleton, 56 Texas, 361, and McGhee v. Romatka, 92 Texas, 38, followed. (P. 322).

7.—Minors—Judgment—Execution.

Minors, like others, being bound by a judgment which the court has power to render against them, are subject, as other persons, to the process of the court which will execute its judgment, in the absence of provision to the contrary by law. (P. 323).

8.—Same—Enforcement in Probate Court.

Articles 2004, 3921, and 4051, Rev. Stats., requiring judgments against guardians, etc., as such, to be enforced, not by execution but by certifying the judgment to the probate court to be there enforced according to law, do not apply to judgments against the minors themselves who have no permanent guardian (here fees of a guardian *ad litem* taxed against them). This is not a judgment against a guardian within the language of the statute. It may be enforced by execution against the property of the minors; The plaintiff in execution is not required to proceed under article 4002, Rev. Stats., to procure the appointment of a guardian for the minors in order that his judgment may be enforced in the probate court. (Pp. 325, 327).

9.—Statutory Construction.

Courts must take statutes as they find them, must find their intent in their words, and are not responsible for omissions in legislation. (P. 324).

10.—Same—Guardian—Ward.

Articles 2004, 3921, 4051, Rev. Stats., construed and the words "guardian" and "ward" as used therein held not applicable to a guardian *ad litem* and the minor represented by him. (Pp. 323-326).

11.—Cases Distinguished.

Adriance v. Brooks, 13 Texas, 279; Laughter v. Seela, 59 Texas, 177; discussed and distinguished; and Alston v. Emerson, 83 Texas, 231, followed. (Pp. 328, 329).

12.—Minors—Decedents.

The powers of courts in dealing with estates of minors and those of decedents distinguished. (Pp. 328, 329).

13.—Execution—Judgment—Partly Void.

Though the judgment under which an execution sale was had was void as to a part of the amount the sale would be supported if the judgment was

valid as to part. Jackson v. Finlay, 40 S. W., 427, and Sage v. Clopper, 19 Texas Civ. App., 502 approved. (P. 330).

**14.—Same—Identifying Judgment.**

Description of a valid judgment supporting sale held to sufficiently identify such judgment. (P. 330).

**15.—Execution—Identifying Judgment.**

The indorsement on an execution of the style and number of the case may be consulted to identify the judgment, Collins v. Hines, 100 Texas, 304, followed. See execution held not void on account of form. (P. 330).

**16.—Due Process of Law.**

The sale of the minor's property under · execution for fees of their guardian *ad litem* was not a taking of same without due process of law. (P. 330).

Error to the Court of Civil Appeals for the Eighth District, in an appeal from Harris County.

The action was trespass to try title, brought by Simmons and others against Arnim and others, who claimed the land by sale under execution against plaintiffs during their minority. Defendants prevailed, and on appeal by plaintiffs the judgment ·was affirmed. 472 S. W., 184. They then obtained writ of error.

*Locke & Locke,* for plaintiff in error.—The order of June 1, 1896, and the judgment of April 14, 1894, on which the execution in question was issued, showed that the judgment debtors were minors; and the statutes of Texas in force at such time expressly and impliedly forbade the enorcement of such judgments by execution sale. Therefore, title was not divested from the plaintiffs by such execution sale. If uniformity were lacking otherwise, it certainly was accomplished by the "omnibus" article making all the provisions, rules and regulations governing estates of decedents applicable also to estates of wards, when not inconsistent with any of the provisions relating especially to guardianships. This article has been construed frequently. Following is a list of the cases: Blackwood v. Blackwood's Estate, 92 Texas, 478; Heinemeier v. Arlitt, 67 S. W., 1038; De Cordova v. Rogers, 97 Texas, 60; Browne v. Fidelity & Dep. Co., 98 Texas, 55; Logan v. Gay, 99 Texas, 603; West v. Keeton, 42 S. W., 1034; Parlin & Orendorff Co. v. Webster, 43 S. W., 569; Magness v. Berry, 69 S. W., 987; Kelsey v. Trisler, 74 S. W., 64; Teague v. Swasey, 102 S. W., 458.

Title will not be divested by an execution sale when the statutes expressly or impliedly forbid enforcement of the particular judgment or judgments in that manner. McMiller v. Butler, 20 Texas, 402; Conkrite v. Hart, 10 Texas, 140; Cunningham v. Taylor, 20 Texas, 126; Chandler v. Burdett, 20 Texas, 42; Hooper v. Caruthers,

78 Texas, 432; Fleming v. Ball, 60 S. W., 985; Lippincott v. Taylor, 135 S. W., 1070.

Art. 2090 relating to estates of decedents emphatically declares that ''no judgment shall be rendered in favor of a claimant upon any claim for money which has not been legally presented to the executor or administrator, and rejected by such executor or administrator, either in whole or in part.'' This is one of the sections as a result of which the policy of this State was found by the courts to be that the death of a person removed his property from the active operation of judgments, liens, mortgages, and legal process, and required all claimants to proceed with their claims to the county court specially and exclusively charged with the administration of the estates of decedents. But this article, by virtue of the omnibus provision, is just as much a part of the law governing the estates of wards, as it is a part of that governing the estates of decedents, unless some reason can be advanced for a difference between them in this respect, or unless it is inconsistent with some statute applicable especially to guardianships. That there is no such statute with which it is even remotely inconsistent goes without saying. In fact, other statutes relating expressly to guardianships, tend in the same direction, if, indeed, they do not accomplish the same result,—especially Art. 2725, which provides that limitation is interrupted on a claim against a ward only when suit is filed after the rejection of the claim by a guardian, the institution of such a suit before presentation to the guardian being an unrecognized proceeding. The same need for protection exists, and in an even greater degree, in the case of an infant. His helplessness is more apparent than that of the adult widow.

The legislators planned, also, that one court should have exclusive jurisdiction over the administration of the affairs of infants. It, therefore, was enacted in our Constitution that the county court should ''transact all business appertaining to minors.'' The plan contemplated that the administration should embrace the entire estate of the minor, and hence it was provided that ''the guardian of the estate is entitled to the possession and management of all property belonging to the ward'' (Art. 2623). By requiring a guardian in every case, by granting to him control of all the infant's property, and by vesting exclusive jurisdiction of his affairs in one court, the purpose of fairness to creditors and protection to the infant were accomplished. These are the distinguishing features of the Texas system of administration of estates of minors, and they are precisely the same as those relating to estates of decedents. Messner v. Giddings, 65 Texas, 301; Allen v. Von Rosenberg, 16 S. W., 1096.

The language of articles 2727, 1344, 2492, we think, includes all judgments for money that may be rendered against a minor.  Cer-

tainly, the language of art. 2492 embraces the judgment or judgments on which the execution in question was issued. The execution in question issued on such judgment or judgments. The allowance was made under the authority of art. 1210. Like other costs, it should have been taxed against the unsuccessful litigant, Jacob Chase (Art. 1425, R. S., 1895; Williams v. Sapieha, 59 S. W., 947; Tutt's Heirs v. Morgan, 46 S. W., 122), who was abundantly able to pay it, and who was primarily responsible for it because he had "incurred it" (Ashe v. Young, 68 Texas, 123; Mitchell v. Mitchell, 80 Texas, 101; Pryor v. Krause, 168 S W., 498). The court had no right to tax it against the minors except for "good cause,"— which did not exist,—"to be stated on the record,"—which was not done (Art. 1438, R. S., 1895; St. L. S. W. Ry. Co. v. King, 122 S. W., 925; Hitchcock v. Blagge, 45 S. W., 931; Lumpkin v. Williams, 119 S. W., 917; Phillips v Sass, 1 Tex. App. Civ., sec. 246; Flores v. Coy, 1 Tex. App. Civ., sec. 804; Texas & P. Ry. Co. v. Taylor, 2 Tex. App. Civ., 418; G. C. & S. F. Ry. Co. v. Sumrow, 4 Tex. App. Civ., 330; Nail v. Bank, 158, S. W., 116; Converts v. Skinner, 156 S. W., 567). The reason for the judge's action was that the plaintiffs' interests were not represented; and because of this and of the want of legal notice of any attempt to charge them with the fee, the judgment and order of the court, as we shall presently show, were void.

But regardless of their validity or propriety, the purported judgments were for "costs." No reason is perceived, why this is not a "case where costs are adjudged against an estate of a ward" within the terms of Art. 2492. The term "guardian," as commonly employed in statutes, includes guardians ad litem. It has been so held in this State: Schonfield v. Turner, 6 S. W., 628; Simon v. Blanchett, 37 S. W., 346; Tutt's Heirs v. Morgan, 42 S. W., 578, 46 S. W., 122; Duke v. Wheeler, 67 S. W., 439. The term "ward" used in its general sense includes every minor for whom a guardian of any kind has been appointed. Sometimes it is used even more extensively to indicate any one whom the law assumes should be under guardianship, whether actually so or not. We think it clear that the contention which would restrict the term "ward" to a person whose estate is under permanent guardianship is unjustified by the term itself, or by anything in the statute, and is wholly at variance with the purpose of the Legislature.

Title will not be divested by execution sale unless the judgment whereon the execution is issued be valid, and unless it fully authorize the execution, and unless the execution be in conformity with the statutory requirements. Battle v. Guedry, 58 Texas, 111; Hart v. McDade, 61 Texas, 208; Capps v. Leachman, 90 Texas, 499; Cleveland v. Simpson, 77 Texas, 96; McKay v. Paris Exch. Bank,

75 Texas, 181;  Flanary v. Wade, 102 Texas, 63;  Fleming v. Ball, 60 S. W., 985;  Harkey v. Day, 129 S. W., 1195.

The execution in question was based to such an extent on the order of June 1, 1896, as to render the sale ineffectual, if such order was void. A single execution drawing its authority jointly from two judgments is void if either judgment be void. Hutchens v. Doe, 3 Ind., 528.

An execution issuing for a substantially greater sum than that legally imposed by judgment is void, and the sale thereunder is ineffectual, especially if the sheriff in performing the excessive command seizes and sells more property than the judgment warrants. Downs v. Dennis (Ark.), 102 S. W., 699; Rankin v. Porter Real Estate Co. (Mo.), 97 S. W., 877;  Hightower v. Handlin, 27 Ark., 20; Davie v. Long's Admx. 67 Ky., 574; Prescott, v. Prescott, 62 Me., 428;  Hastings v. Johnson, 1 Nev., 613;  Knight v. Applegate's Heirs, 3 T. B. Mon. (Ky.), 335;  Glidden v. Chase, 35 Me., 90;  Lufkin v. City of Galveston, 73 Texas, 340;  Eustis v. City of Henrietta, 91 Texas, 325;  May v. Jackson, 73 S. W., 988; Morris v. Balkham, 75 Texas, 111;  Cleveland v. Simpson, 77 Texas, 96;  Capps v. Leachman, 90 Texas, 499;  Underwood v. Brown, 68 S. W., 206;  Flanary v. Wade, 102 Texas, 63.

Decisions are not wanting that under such circumstances the overstatement of the amount legally collectible vitiates the sale: Hightower v. Handlin, 27 Ark., 20;  Davie v. Long's Admx., 67 Ky., 575;  Prescott v. Prescott, 62 Me., 428;  Hastings v. Johnson, 1 Nev., 613;  Downs v. Dennis (Ark.), 102 S. W., 699;  Rankin v. Porter Real Estate Co. (Mo.), 97 S. W., 877;  Knight v. Applegate's Heirs, 3 T. B. Mon. (Ky.), 335;  Glidden v. Chase, 35 Me., 90.

The principle invoked is precisely the same as that which renders void a sale of land for taxes of an excessive amount. Lufkin v. City of Galveston, 1889, 73 Tex. 340;  Eustis v. City of Henrietta, 91 Texas, 325;  Hutchins v. Doe, 3 Ind., 528;  Coleman v. Crowdus, 178 S. W., 58;  Hill v. Lofton, 165 S. W., 67.

Though a district court may retax costs after the expiration of the term, it is without authority to amend any final judgment rendered thereat. Hedgecoxe v. Connor, 43 S. W., 322;  Patton v. Cox, 97 Texas, 253;  Smallwood v. Love, 78 S. W., 400.

A judgment rendered against minors when they are not, either voluntarily or compulsorily, before the court, and are not represented by a guardian or guardian ad litem, is void. The minors were not represented by guardian or guardian *ad litem,* for the purpose of such order. Simpson v. Trimble, 44 Texas, 310;  Perkins v. Perkins, 9 Heisk. (Tenn.), 94;  Loftis v. Butler (Tenn.), 58 S. W., 886;  Crosby v. Bannowsky, 95 Texas. 449;  Johnson v. St. Louis Trac. Co., 164 S. W., 199;  James v. James, 164 S. W., 47.

The minors were in court at the instance of the plaintiff only. They did not voluntarily appear, and they were not brought in by any process to answer the claim in question. It has been held several times in Texas that a judgment rendered in such circumstances is void: Dunlap v. Southerlin, 63 Texas, 38; Patton v. Collier, 90 Texas, 115; Roller v. Reid, 87 Texas, 69; White v. Simonton, 79 S. W., 621; Shippers' Compress & W. Co. v. Davidson, 80 S. W., 1032; Houston, E. & W. T. Ry. Co. v. Skeeter Bros., 98 S. W., 1064; McCamant v. McCamant, 187 S. W., 1096; Johnson v. St. Louis Trac. Co., 164 S. W., 199; Owen v. Smith, 136 N. W., 119; Des Moines Union Ry. Co. v. District Court, 153 N. W., 217; Scott v. Scott, 156 N. W., 834.

A plaintiff is not in court as to a counter-claim urged by the defendant unless he appears, or is served with process on it: Harris v. Schlinke, 65 S. W., 172; Smith v. Carr, 173 S. W., 602. A defendant is not in court as to an amended petition changing the cause of action, unless he appears or is served with process on it: Morrison v. Walker, 22 Texas, 18; Watson v. Miller, 5 S. W., 680; Harris v. Schlinke, 65 S. W., 172; Chicago, R. I. & G. R. Co. v. G. Groner, 100 Texas, 414; Cooney v. Van Deven, 182 S. W., 1190. A defendant is not in court as to a claim made by a codefendant unless he appears or is served with process on it: Johnston v. Fraser, 92 S. W., 49; Schwartzlose v. Wagner, 81 S. W., 70; McNeese v. Bank, 183 S. W., 1184; Wood v. Love, 190 S. W., 235; Swift v. Beemer, 160 S. W., 989; Ivey v. Davis, 178 S. W., 972. A citation in a suit by the State for taxes which describes the suit as "an action for taxes" has been held insufficient notice to· the defendant that the State sought a foreclosure of tax lien, and the judgment attempting to foreclose such lien has been held void: Netzorg v. Geren, 62 S. W., 789.

After the completion of a suit, notice must be given of any further proceeding in order to vest the court again with jurisdiction. This is elementary. The authorities supporting it are too numerous for citation. Following are only a few of them. Toler v. Ayres, 1 Texas, 398; Gage v. Page, 10 Texas, 365; DeWitt v. Monroe, 20 Texas, 289; Simpson v. Trimble, 44 Texas, 310; Beck v. Avondino, 50 S. W., 207; Penniman v. Tinsley, 75 S. W., 367; Wall v. Melton, 94 S. W., 358; Gause v. State, 131 S. W., 605; Murray v. Tardy, 19 Ala., 710; Stringer v. Echols, 46 Ala., 61; Perry v. Kaspar, 85 N. W., 22; Iowa Savings & Loan Ass'n. v. Chase, 91 N. W., 807; Mulvey v. Carpenter, 78 Ill., 580; Smith v. Woolfolk, 115 U. S., 143; Wetmore v. Karrick, 205 U. S., 141.

The execution in question was not in conformity with the requirements of the statutes, in that it did not correctly describe the judgment or judgments on which it was issued, or the parties to the same, and did not set forth the property to be sold for the satisfac-

tion thereof. Morris v. Balkham, 75 Texas, 111; Cleveland v. Simpson, 77 Texas, 96; Capps v. Leachman, 90 Texas, 499; Underwood v. Brown, 68 S. W., 206; Flanary v. Wade, 102 Texas, 63.

The purported judgment of April 14, 1894, as well as the purported order of June 1, 1896, having been rendered against the plaintiffs, as already has been shown, when they were not voluntarily or compulsorily before the court and were not represented by a guardian or guardian *ad litem,* and the execution sale being a summary enforcement of such purported judgment and order, the action of the trial court in giving effect to the same and in directing the jury to return a verdict for the defendants, constituted a deprivation of the plaintiffs of their property without due process of law. Middlesworth v. Houston Oil Co. of Texas, 184 Fed. 857, 232 U. S., 723; Galpin v. Page, 18 Wall., 350.

*Baker, Botts, Parker & Garwood* (*Jesse Andrews* of counsel) for defendants in error.

The District Court acquires full jurisdiction of the person of a minor defendant when a guardian *ad litem* for the minor is appointed, although no citation has been issued or served; *a fortiori* where citation has been issued and served. McAnear v. Epperson, 54 Texas, 220; Montgomery v. Carlton, 50 Texas, 365; Alston v. Emmerson, 83 Texas, 231; Penn v. Case, 36 Texas Civ., App., 10

The court had full and complete jurisdiction of the minor defendants in the suit of Chase v. Gregg to enter the judgment dated April 14, 1894, including the allowance to the guardian ad litem, and this judgment is therefore not subject to this collateral attack. Grogan v. Spaulding, 155 S. W., 1014.

It was in the power of the District Court in Chase v. Gregg to appoint Captain Taliaferro guardian ad litem and "allow him a reasonable compensation for his services," which was done. (Art. 1210, R. S. 1895, Art. 1942, R. S. 1911.) And to tax this, as between Captain Taliaferro and the minors, against them. Art. 1438, R. S. 1895; Art. 2048, R. S., 1911; Jones v. Ford, 60 Texas, 127; Morrow v. Terrell, 50 S. W., 734; Templeton v. Ferguson, 89 Texas, 47.) The error, if error it was, in taxing the allowance against the minors without requiring the good cause for so doing "to be stated in the record," was at most but the erroneous exercise of a power—not the lack of power, and the mode of exercise of it cannot be questioned on collateral attack. (Crawford v. McDonald, 88 Texas, 630; Ringstad v. Hanson, 130 N. W., 145.)

That it was proper that the minors as between them and Captain Taliafero should be responsible primarily for the payment of the allowance to him, see the following: Holloway v. McIlhennny Co., 77 Texas, 657; Ashe v. Young 68, Texas, 125; 10 Encyc. of Pl. & Pr., 683; 22 Cyc., 667; Kerbaugh v. Vance, 5 Lea (Tenn.), 113;

Persons v. Young, 7 Lea (Tenn.), 293; Owens v. Gunther, 86 S. W. (Ark.), 851; Pope v. Lyttle, 163 S. W., 1121.

The cases all hold that the allowance should be made by the court in which the appointment is made. 22 Cyc., 666; Smith v. Smith, 69 Ill., 308; Staggenborg v. Bailey, 80 S. W., 1109, 26 Ky. L. Rep., 188; Robinson v. Fidelity Trust Co., 11 S. W., 806, 11 Ky. L. Rep., 313.

An execution may properly be issued against minors where no guardianship proceedings have been instituted. 22 Cyc., 705; Adriance v. Brooks, 13 Texas, 279; Laughter v. Seela, 59 Texas, 184; Shaffner v. Briggs, 36 Ind., 55; Lemon v. Sweeney, 6 Ill. App., 507; Albee v. Winterwink, 55 Iowa, 184; Hank v. Harris, 112 Iowa, 543; Ringstad v. Hanson, 130 N. W., 145; Howett v. Alexander, 12 N. C., 431; Dillon v. Burnham, 22 Pac., 1016; Cook v. Edson, Keith & Co., 82 S. W., 918; Ashe v. Young, 68 Texas, 124; Alston v. Emmerson, 83 Texas, 234; Day v. Johnson, 32 Texas Civ. App., 1071.

Such judgments against minors not represented by a general guardian or a guardian *ad litem* have often been rendered. They are not void. (Montgomery v. Carlton, 56 Texas, 365; Ashe v. Young, 68 Texas, 125). Clearly, in such cases there would be no costs "adjudged against the estate of a ward." There would be no "ward." There would merely be costs taxed against an individual who happened to be a minor.

An execution which identifies the judgment upon which it is issued is not void because issued for a larger amount than is due. Hunt v. Loucks, 38 Cal., 372; Berry v. Gates, 56 N. E., 581; Kleber's Void. Jud. & Ex. Sales, secs. 25, 259, 267; 8 Encyc. of Pl. & Pr., 410, 429, 430; Sage v. Clopper, 48 S. W., 36; Ex Parte Hunt, 82 Atl. 178; Otis Bros. v. Nash, 66 Pac., 111; O'Brien v. Allen, 85 Pac., 8; Doehla v. Phillips, 91 Pac., 330.

The allowance to a guardian ad litem for the services rendered by him in the entire case must be made by the court wherein he was appointed. Robinson v. Fidelity Trust & S. V. Co., 11 S. W., 806; Williams v. Williams, 72 S. W., 271; Staggenborg v. Bailey, 80 S. W., 1109; Tyson v. Richardson, 79 N. W., 439; In re Korn's Will, 107 N. W., 659; 15 Am. Eng. Enc. Law, 2d. Ed., p. 15; Shelby v. Meikle, 86 N. W., 939.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The question presented by the case is whether as against a collateral attack there should be held as invalid an execution sale of the property of minors under a judgment for the fee allowed their guardian *ad litem* in a case where they were the successful parties, and a further judgment, rendered at a subsequent term of the court, allowing the guardian *ad litem* an additional fee; the minors

having no permanent guardian, and there being no attempt to execute the judgments through the Probate Court.

The present suit is an action of trespass to try title brought by the minors after attaining their majority, to recover the property so sold—about one-half of a block of real estate in the city of Houston.

The material facts, briefly stated, are these:

In August of 1893 one Jacob Chase instituted a suit in the District Court of Harris County against the minor grandchildren of Darius Gregg, the plaintiffs in the present action, their mother and their step-father, and against the step-father as the executor of the estate of their deceased father, to remove cloud from title to the property here involved and other property. It was recited in Chase's petition that there was a mutual agreement between himself and the defendants to have the difficulty, as pleaded by him, in their titles removed, but owing to the minority of some of the defendants it was necessary to invoke the judgment of the court. The prayer of the petition was that the rights between the defendants and himself be adjusted in accordance with the petition, "and for this," it concluded, "plaintiff has agreed that costs be adjudged against him."

It is evident from the recitals and prayer of the petition that Chase expected only a friendly suit and a judgment entirely favorable to himself; and that such anticipation was his reason for in effect asking that the costs be adjudged against him.

The minors were duly served with a copy of Chase's petition.

Their mother and step-father, and the latter as executor of their father's estate, filed an answer admitting the justice of Chase's claim and asking that judgment be given as asked by him.

S. Taliaferro, Esq., an attorney of Houston, was appointed by the court to act as guardian *ad litem* for the minors. He successfully resisted Chase's suit, and by cross-action against Chase obtained for the minors removal of cloud from the title to other lands claimed by Chase; a judgment in all things favorable to them being rendered, April 14, 1894.

At one place in the judgment it was provided that the defendants should recover their "costs of court" against Chase. At its conclusion, it recited that $1200 was allowed the guardian *ad litem* as a fee, for his services, "rendered and to be rendered," in the recovery of the lands, to be paid out of the estate of the minors "recovered herein," but not out of any of their other property.

Chase appealed, and the judgment against him was affirmed—in this court on October 28, 1895. 88 Texas, 552, 32 S. W., 520.

After the decision in the Supreme Court, the guardian *ad litem*, in December, 1895, filed in the District Court of Harris County a motion reciting that the services performed by him since the allow-

ance of his original fee had not been foreseen or taken into considera-
tion in that allowance, and praying for an additional allowance.

On June 1, 1896, this motion was granted by the court, and by
order of that date an additional allowance of $500 was made the
guardian *ad litem,* the order reciting that the total allowance of
$1700 should be paid out of the estate of the minors recovered in the
cause.

On these two judgments execution was issued, in September, 1896,
in favor of the guardian *ad litem* against the minors, commanding
that $1700, with 6% interest from April 14, 1894 on $1200 and
6% interest from June 1, 1896 on $500, be made out of their goods,
etc., and lands recovered in the suit.

The execution was levied upon the real estate in controversy, a part
of that involved in Chase's action but not of that included in the
minor's cross-action. It was bought for $1700 at the sheriff's sale
in November, 1896, by T. W. House, a banker, who took the title
for the guardian *ad litem* as a means of securing indebtedness of
the latter to him; the consideration for the sale being a credit upon
the judgments.

The defendants in the present suit, filed in March, 1911, claim
under the sheriff's deed to House.

A verdict for the defendants was directed in the trial court, the
judgment being affirmed by the Court of Civil Appeals.

In our view of the case the execution sale should be held valid
against collateral attack, the character of attack here made, unless

1.   The original judgment taxing the fee for the guardian *ad litem*
against the minors, was void; or

2.   That judgment could be lawfully executed only through the
Probate Court;  or

3.   The execution itself was rendered void because of failure to
sufficiently identify, according to the statutory requirements, a valid
judgment authorizing its issuance.

In determining the effect of the original judgment in its taxing
of the guardian *ad litem's* fees against the minors, it is immaterial
here whether it was an erroneous judgment—that is, a voidable judg-
ment. The judgment was before the court in the present case only
collaterally; necessary, it is true, to support the execution and sale
under it, but only as constituting a link in the defendant's chain of
title. It is therefore of no consequence in this inquiry that for
sufficient reasons it would have been reversible on appeal, or subject
to annulment on direct attack. The question here concerns only
the court's power. It has nothing to do with the exercise of the
power. Only an entire want of power to render the judgment
could make it void. The question is, therefore, simply whether the
court had the power to render such a judgment; not whether,
having the power, it rendered an erroneous judgment.

The fee of the guardian *ad litem* was taxable as part of the costs in Chase's suit. Article 1942. But the court was not bound, under declares that "for good cause, to be stated on the record," the court may adjudge the costs otherwise than as provided in the preceding the law, to tax it against Chase. The minors were the successful parties in the suit, and Article 2035 declares that such parties shall recover of their adversary in the suit all costs incurred in it, "except where it is or may be otherwise provided by law." In Article 2048 of the same chapter it is so "otherwise provided." That article articles of the chapter.

It is therefore plain that the law did not absolutely require the court to tax the fee of the guardian *ad litem* against Chase. For "good cause," a matter for the court's decision, the court had, under the law, the authority—the power, to tax it against the minors. As against whom it should be taxed, whether Chase or the minors, was by the statute given to the court's discretion. It being within the court's discretion to tax the fee against the minors according to whether the court deemed there was "good cause" for such action, it was within the court's power to so tax it.

The statute directed, if the fee was so taxed, that the cause regarded by the court as sufficient to warrant such award in the judgment, be stated on the record. It does not appear that this was done. But this feature of the statute was only a direction as to the manner in which the court's power should be exercised. The power was, according to the statute, to be exercised in that way, and should have been. But failure to exercise it in that way did not rob the court of the power. At most, it was but an irregular exercise of the power. It may have rendered the judgment erroneous—voidable. It did not operate to make it void.

The court was doubtless of the view that under all the circumstances of the case it was inequitable to tax the fee against Chase, but because of the service rendered the minors by the guardian *ad litem* in quieting their title to the lands involved, it was more just to make it a charge upon the lands themselves. No other view, under the record, is to be imputed to the court in its action. Whether there was fair warrant for this view, whether the court reached the proper conclusion, and therefore whether its judgment in this respect was correct, are all questions wholly beside the true one here. The court had the authority, the power, under the statute to decide the matter and award the fee as it did in the judgment. That forecloses all question as to the validity of the judgment in this respect against collateral attack.

It is denied that the court had jurisdiction of the minors for the rendition of such a judgment, because, it is urged, they were not summoned in Chase's suit to answer any such demand as that presented by the guardian *ad litem's* fee, and hence were not before

the court for any such adjudication; and further, because they were unrepresented in the adjudication, the interest and position of the guardian *ad litem* with respect to the fee being adverse to them.

The court had in Chase's suit jurisdiction over the persons of the minors, obtained by the due service of citation. Having jurisdiction of their persons, the minors were before the court for judgment, either favorable or adverse, as to anything that the court had the power to determine in the suit, or lawfully incident to its determination. The power of the court to determine against which of the parties the guardian *ad litem's* fee, as a part of the costs, should be charged, was but a part of its power to adjudicate the suit. Its authority extended as fully to the former as the latter. Though incidental to the determination of the suit, the award of the costs was a proper, if not a necessary part of its determination. In virtue of the court's jurisdiction of their persons, the minors were as fully subject to the court's power to award the costs, or any part of the costs, as to its power to otherwise determine the suit. Being no less subject to the court's jurisdiction or power over the question of the costs and to adjudge the costs, than to its authority to adjudge the issues in the suit, the minors were before the court for any such adjudication of. the costs, including the guardian *ad litem's* fee, as it was within the court's power to make.

The court's jurisdiction of the minors for the rendition of judgment with respect to the fee, was not dependent upon the judgment being favorable to them. It depended upon the court's power, whether exercised in their favor or against them. To render them subject to the court's jurisdiction for the award of the fee, it was not required that they know in advance what its judgment would be. They would be held to know that the court's power was what the statute declared, that it was within its power to tax the fee, as costs, against other than the unsuccessful party. They would be held to know, therefore, that it was within the court's power to tax it against themselves though they prevailed in the suit. They were not before the court for only such an exercise of its power as would exempt them from being charged with the fee. They were before it for any decree in the premises within the power of the court to render. The court had the power to adjudge the fee against. them as it did adjudge it, regardless of whether its judgment was correct. It therefore had jurisdiction of the minors in the rendition of the judgment.

This is true, notwithstanding the offer of Chase's petition that the costs of the suit be decreed against him. Chase's offer—which was predicated upon an anticipated result altogether favorable to himself and essentially different from that which developed through the guardian *ad litem's* successful resistance of his claim and recovering against him on an. independent claim in behalf of the

minors—could not deprive the court of its power under the statute. It was not bound by the offer. It was not precluded from taking into consideration whether, under the different condition presented by the result of the suit from that Chase had in mind in making the offer— not only the defeat of his claim, but judgment against on the minor's cross-action quieting their title to other lands—Chase should be taxed with the guardian *ad litem's* fee in addition to the other costs. The statute, not Chase's petition, determined the court's power in the matter. Its declaration, in effect, was that the court had the power to deem these circumstances sufficient cause for not assessing all the costs against Chase, but only the court costs, and let the involved lands of the minors bear the charge of the guardian *ad litem's* fee. This was done by the judgment.

The statute charged the minors with knowledge that, regardless of Chase's petition, it was within the court's power to give such a judgment. If they were under the court's jurisdiction for any purpose, they were subject to it for such judgment with respect to the costs as the statute gave the court the power to render, whether a correct judgment or not. Had the statute required that under the situation presented all costs be taxed against Chase, the court could not have lawfully otherwise taxed them. But it did not so require. It empowered the court, for whatever it might regard "good cause," to tax them against the minors. This did not limit the court in its action to Chase's petition. It gave it freedom of opinion and judgment in the light of all the features of the case. It bestowed the power to adjudge the costs as the court thought they should be. A judgment sustained by power in the court to render it, is not void.

Since the court had jurisdiction of the minors for the award against them of the guardian *ad litem's fee,* it is immaterial, on the question here, whether the guardian *ad litem,* for the recovery of the fee, be regarded as their antagonist; or that another guardian *ad litem* was not appointed to represent them in the matter of the fee. A judgment rendered against minors, having no permanent guardian, of whose persons the court has jurisdiction, upon a plainly antagonistic claim, without representation by a guardian *ad litem,* is not void. Montgomery v. Carlton, 56 Texas, 361; McGhee v. Romatka, 92 Texas, 38, 45 S. W., 552.

These cases well illustrate how the failure of a court in the exercise of a valid judicial power to observe a direction of a statute which has only to do with the exercise of the power and not the power itself, may render its judgment voidable, but will not make it void. The appointment of a guardian *ad litem* for a minor defendant who has no guardian within the State is, under the statute, the plain duty of the court in any suit. But with the court invested with the power to render judgment, in virtue of jurisdiction over the person of the

minor duly obtained, an omission to observe that duty does not divest it of its power; and hence a judgment in such a suit against a minor unrepresented by a guardian *ad litem* is not void.

Since minors, notwithstanding their disability, are, like other persons, bound by a judgment which the court has the power to render, unless the judgment is in some appropriate way set aside, they are likewise subject, as other persons, to the process of the court which will execute its judgment, in the absence of provision by law to the contrary. This is the general rule. There is to be considered, accordingly, whether there is any statutory provision in this State which denies to a court the power to execute against a minor having no permanent guardian a judgment which it had the jurisdiction to render.

There are three articles of the statutes, all in force when the proceedings under review were had. which the plaintiffs in error contend had the effect of denying the execution, lawfully, of either judgment for the guardian *ad litem's* fees, even if valid, except through a guardianship proceeding in the Probate Court.

They are:

Article 2004. Where a recovery of money is had against an executor, administrator or guardian, as such, the judgment shall state that it is to be paid in due course of administration, and no execution shall issue on such judgment, but the same shall be certified to the county court, sitting in matters of probate, to be there enforced in accordance with law.

Article 3921. The preceding articles in relation to executions and payment of costs do not apply to executors, administrators or guardians, but in cases where costs are adjudged against an estate of a deceased person, or of a ward, the same shall be collected as provided in the titles, "Estates of Decedents," and, "Guardian and Ward."

Article 4051. The provisions, rules and regulations which govern estates of decedents shall apply to and govern such guardianships, whenever the same are applicable and not inconsistent with any of the provisions of this title.

By Article 4067 it is made the duty of the County Judge, whenever it shall come to his knowledge that there is within his county a minor without a guardian of his person or estate, to cause citation to be posted to all persons interested in the welfare of the minor to show cause why a guardian of the minor should not be appointed. Under Article 4062, any one may make application that a guardian for a minor be appointed.

Under this article and those above given, is a judgment creditor of a minor, whose person or estate is not under the jurisdiction of the Probate Court in a guardianship proceeding, required to institute such a proceeding, or cause it to be instituted and perfected, for the execution of his judgment? Our conclusion is that he is not.

There may be good reasons for imposing such a requirement. It might afford a protection to the minor's estate which it would not otherwise have. It might better accord with the concern and care for the welfare of minors and the preservation of their property which should mark the public policy of a State. It may be that a minor who is without a permanent guardian is as much, or more entitled to be exempted from a peremptory sale of his property at the hands of creditors, than one who has such a guardian; and that a money judgment against him should not be satisfied except as is required in the case of a pending guardianship, through a sale ordered by the Probate Court. It may be that there should not be denied for him the opportunity of giving a delivery bond for property taken under execution, as under Article 3748 persons · capable of binding themselves may do.

On the other hand, reasons suggest themselves for not denying the creditor in a just and lawful judgment against a minor, the right to an execution of his judgment under the power of the court that rendered it, where the property of the minor lawfully subject to its payment is under the jurisdiction of no other court. If he be compelled to sue out a guardianship for the collection of his judgment, or cause it to be done, the guardianship must be for the whole of the minor's estate. The bond of the person entitled to be appointed guardian and who is appointed, must be in an amount equal to double the estimated value of the estate. The judgment creditor's claim may be only for a very small amount. The value of the minor's estate may be a very large amount. It may be questioned whether as a matter of public law such a judgment creditor ought to be required to bring about the appointment as guardian of some qualified person willing and able to give a heavy bond and assume the burdens and responsibilities of the guardianship, before being entitled to the satisfaction of his small judgment claim.

Whatever may be the reasons for or against such a requirement, it is a matter for the Legislature and not the courts. Under no fair and warrantable construction of the present statutes as they are written, is it, in our opinion, now in force.

Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

Under Article 2004, it is a recovery of money against an executor, administrator or "guardian, as such" that is required to be certified to the Probate Court and there enforced. The art'cle plainly contemplates an existing guardianship at the time of the recovery, and a recovery against the guardian in his representative capacity. It does not purport to deal with a recovery of money against "a minor" or "minors."

The effect of Article 3921 is to prohibit executions for costs of suits against "guardians;" but wherever costs are adjudged against an "estate of a ward," to require that they be collected as provided in the title of the statutes, "Guardian and Ward." It indicates with reasonable clearness that what the Legislature had in mind in its enactment were only cases where costs of suit had been adjudged against estates of minors then under guardianship in the Probate Court. If the Legislature meant for the article to refer, as well, to cases where costs had been adjudged against "minors" or "estates of minors," it would seem that it would have made that meaning plain by somewhere in the article making use of those terms instead of prohibiting in its opening clause executions only against executors, administrators, and "guardians," and requiring in the other clause the collection of costs through the Probate Court only where adjudged against an estate of a deceased person or "a ward."

Unless the term "guardians," as used in the article, includes a guardian *ad litem,* it must refer only to a guardian constituted by a guardianship in the Probate Court. If it does refer only to a guardian of the latter class, the phrase "estate of a ward," used as it is in immediate context, refers, it ought to be assumed, only to the estate of a ward of the same kind of guardian. It is hardly possible that the term "ward" in the article means the ward of a different kind of guardian from that to which the term "guardians" in the article refers. It is more reasonable to conclude that one term refers to only the same kind of guardian and ward relationship that the other does.

It is clear that the term "guardians," in the article, does not refer to a guardian *ad litem,* because there could hardly be an instance where an execution for costs of suit would lie against a guardian *ad litem.* In actions against or concerning minors or their property in which a guardian *ad litem* is appointed to represent them, he does not become a party to the suit. His relationship to the controversy is only that of an officer of the court, imposed with the duty of protecting the interest of the minors, but subject to no liability, in either his individual or official capacity, with respect to what the suit involves, or because of its result. The case is hardly imaginable in which, having only this relation to the suit or its parties, he could be lawfully made in any way responsible for

the costs chargeable against the minors represented by him, or their property; or in which an execution for costs against him in his official capacity would be warranted.

The term "ward" in the article, plainly means the kind of ward dealt with in the title "Guardian and Ward," to which the article, itself makes reference—a ward whose *status* is created by a guardianship proceeding had under that title. And where the article speaks of costs adjudged against "an estate of a ward," it means the estate of one who is a ward in virtue of such a proceeding when the costs are adjudged.

Where an estate is withdrawn to the jurisdiction of the Probate Court, that, of itself, would prompt the Legislature to protect that jurisdiction from the seizure and sale of the property under the process of other courts upon judgments for any kind of money demand, whether for costs of suits or other kinds. A purpose, however, to require the institution of a guardianship before the payment of the mere costs of suit adjudged by a competent court, which may be in only a trifling amount, can be enforced against the property of a living person who only rests under a legal disability, where the property is under the jurisdiction of no other court, ought to be more plainly expressed than it is by any of these articles.

Articles 4051 is found in the opening chapter of Title 64, "Guardian and Ward." The title deals, as already stated, only with guardianships created under the powers of the Probate Court. The guardianships to which, by Article 4051, the regulations governing estates of decedents, as far as applicable and not inconsistent with the provisions of Title 64, are to apply, are not guardianships generally, but "such" guardianships. This plainly means only guardianships of the character dealt with in the title. If there is in existence no guardianship of that character, there is nothing to which the article can relate.

As bearing upon the intent of those different statutory provisions, as well as Article 4230—which declares as to claims established by judgment against the estate of a ward, the judgment shall be filed with the clerk of the court in which "the guardianship is pending," showing that the article contemplates a ward under a pending guardianship when the judgment is recovered—, stress is laid by the plaintiffs in error upon expressions found in Chief Justice Hemphill's opinion in Adriance v. Brooks, 13 Texas, 279. These, it is said, were a suggestion by him that the law with respect to the enforcement of debts against the estates of minors should be the same as that governing debts against the estates of decedents, which required at that time, as now, that they be collected through the Probate Court. It is argued that the subsequent legislation and codification which developed into the present statutes above

referred to, were for the purpose of carrying that suggestion into effect; and therefore these statutes mean that no money claim against any minor can be enforced except through the Probate Court. Judge Hemphill's opinion does not evidence that he thought such should be the law. If that was his view, the Legislature has not adopted it.

The case of Adriance v. Brooks presented the question as to whether the issuance of execution against a guardian constituted by a guardianship proceeding in the Probate Court and then pending, was lawful. It did not involve an execution against the estate .of a minor not being administered under a guardianship in that court. According to the law as it then was, and as affirmed by the decision, execution could issue against a guardian, although the estate was under the administration of the Probate Court. This was because of the defective wording of Section 118 .of the Act of May 13, 1846, whereby, in suits ''against executors and administrators,'' executions against them were forbidden, and which, at one place, vaguely indicated a probable intention, on the part of the Legislature, that executions should also lie in suits ''against guardians.'' It was this section of the act that was before the court; and upon its effect the decision of the question turned. It is reasonably apparent from the opinion that it was to this condition of the law Judge Hemphill directed attention, and as to which it was his view that the law should be changed so as to conform to that governing executions against estates of decedents. The law was afterwards, in 1879, so changed, as it should have been; and is now found in Article 2004.

But as to minors or the estates of minors, it was so changed as to prevent the issuance of execution only where there is a recovery of money against ''a guardian as such.'' As thus re-written, the article can have no application where there is no constituted guardian against whom a recovery may be had.

While in his opinion Judge Hemphill stated that in his view ''the estate of a minor'' should be placed on the same footing with respect to executions against it as that of a decedent, that he had in mind only the estates of such minors as were being administered in the Probate Court, is revealed by the affirmative reason given by him for making the suggested change in the law. It was that ''it would equalize the law in relation to estates under the control of trustees or agents.'' Only a minor's estate in the hands of a permanent guardian, is, by the statute law, under such control.

In Laughter v. Seela, 59 Texas, 177, an execution sale of the property of a minor upon a judgment against him for costs rendered in a proceeding for the partition of an estate by the Probate Court, was sustained. The court treated the record in the case

as probably showing that a guardian for the minor's estate had been appointed prior to the rendition of the judgment. While in the opinion importance is attached to the fact that the judgment was rendered in a partition proceeding in the Probate Court, it is evident that the court considered this as warranting, under the statutes before it, an execution against a minor for costs upon such a judgment, even though his estate were under a pending guardianship. There is nothing in the opinion to indicate any doubt in the court's mind as to the validity of an execution against a minor where he is without a permanent guardian. The decision is in part rested upon the general rule, that the disability arising from infancy does not exempt a minor from the control of the courts, or his property from process for the enforcement of their judgments.

In Alston v. Emmerson, 83 Texas, 231, an execution sale of the property of minors not having a permanent guardian, for the satisfaction of a judgment for costs, was upheld. The question as to whether the judgment could be enforced only through the Probate Court, was not raised. The validity of the judgment only was challenged, upon the ground that the court was without jurisdiction. The validity of the execution sale, on collateral attack, does not appear to have been doubted if the judgment was not void. However, the validity of the sale was involved, under the issue of limitation made by the appellants, against whom, as minors, the judgment for costs was rendered, as Judge Stayton's opinion discloses. For the determination of the latter question it was necessary to pass upon it. In determining the limitation question it was held that the execution sale passed the title of the minors to the property involved. The holding may be regarded as a recognition by the court that it was not necessary to resort to the Probate Court for the collection of the judgment against the minors.

At the time of the execution sale there considered, present Articles 2004 and 4051 were not in effect; nor were Articles 3921 and 4230 in their exact present form. This is urged by the plaintiffs in error against the force of the decision as authority here. There was in effect, though, the Act of August 23, 1876, the 26th Section of which prohibited executions for costs due by guardians. Present Article 3921, one of the articles urged by plaintiffs in error as requiring the collection through the Probate Court of costs adjudged against minors represented by a guardian *ad litem,* had its origin in that section. The construction of Article 3921 as contended for here by the plaintiffs in error, would have condemned the execution sale in Alston v. Emmerson, under the 26th section of the Act of August 23, 1876. The court was not unfamiliar with that act, and if it had deemed such to be proper construction of the 26th Section, it is not to be supposed that it would have held the execution sale effective to divest the minors of their title.

The incapacity of minors, it is true, is the basis of the law of guardianship and the reason for the creation of probate jurisdiction over their estates. The protection of the same jurisdiction is required for estates of decedents. But the consequences of legal disability are not the same as those of death. The law does not treat them as identical in their effect. It is a mistake to suppose that it must, necessarily, give property affected by the one the same *status* as that affected by the other. The infancy of a minor does not exempt him from the ordinary control of the courts. He is bound by their judgments unless set aside; and being bound by them, he is subject to the enforcement of them. A decedent is accountable to no earthly court. Death frees him from their jurisdiction. In this State it immediately releases his property from the active operation of executions and other liens, and removes it with its liabilities to the jurisdiction of the Probate Court.

But are the reasons for this the same as obtain with respect to the guardianship of a minor? To a certain extent they are, but they are not primarily so. The primary purpose of probate control of a decedent's estate is its settlement in the manner deemed just by the law, and after its settlement its distribution among the heirs in ordinary course, or in accord with testamentary direction. The purpose of probate control of a minor's estate is primarily only its competent management. A chief reason, if not the controlling one, for immediately releasing the property of a decedent from the active operation of executions, can have no application to the property of a minor. It is the humane purpose of making proper provision for the decedent's widow and children. It is, to accomplish the payment, first, of their allowances and other preferred claims which the law regards as demands upon the estate superior to those of creditors. Judgments do not come first in the rank of claims entitled to satisfaction from a decedent's estate. To preserve the property for what the law deems a higher purpose, is a principal, if not the main reason for denying their summary enforcement against it. McMiller v. Butler, 20 Texas, 403.

This is not true as to the property of a minor; and not being true, a supposed identity in its status with that of a decedent's estate does not, as the plaintiffs in error urge, furnish a conclusive test of the Legislature's intention in the enactment of these statutory provisions relied upon as denying execution against such property in all cases. The lack of the same necessity withholds from these statutes a controlling reason for the law which exempts a decedent's estate from execution, and serves to refute the contention that they were meant to have the same broad and general operation.

The forced sale of a minor's property seems severe. But all forced sales of property are severe. Property lawfully subject to the payment of just debts is not immune from judicial process for that reason. It is a consequence which inheres in the enforcement of judgments. The remedies of equity are always available for the protection of minors. Courts of equity are quick to shield them from hardship or oppression, even in the absence of fraud (Wallis v. Stuart, 92 Texas, 568, 50 S. W., 567); and would readily move to prevent, or relieve against, the sacrifice by forced sale of the property of a minor who is without a guardian.

The execution was not, in our opinion, a void execution, though the order of June 1, 1896, allowing the guardian *ad litem* the additional fee, upon which it was based in part, be treated as void. It is unnecessary, therefore, to determine whether that order was void. The execution showed upon its face by distinct reference to the judgment of April 14, 1894, that it proceeded from that judgment, as well as the later order. It identified that judgment by accurate description as in part its source. If the later order was void, the execution was only for an excessive amount, rendering it voidable and subject to correction, but not making it a nullity. Being based in part upon a valid judgment to which it was shown on its face to relate, on principle it can not be regarded as wholly without effect. Jackson v. Finlay, 40 S. W., 427; Sage v. Clopper, 19 Texas Civ. App., 502, 48 S. W., 36; Hunt v. Loucks, 38 Cal. 372, 99 Amer. Dec., 404; Anderson v. Gray, 134 Ill., 550, 23 Am. St., 696, 25 N.. E., 843; Berry v. Gates, 175 Mass., 373, 56 N. E., 581; Otis Bros. v. Nash, 26 Wash., 39, 66 Pac., 111.

The execution was not void on account of form. It correctly described the judgment of April 14, 1894, for the guardian *ad litem's* fee by giving the names of all the parties to it, the date, the amount, the court, etc. The endorsement upon its back correctly stated the style and number of the case. It was permissible to consult the endorsement for the style of the suit. Collins v. Hines, 100 Texas, 304, 99 S. W., 400. No one reading the entire document could have any doubt as to any feature of the judgment, nor as to the suit in which it was rendered.

The plaintiffs in error have not been deprived of their property without due process of law, as is further urged. They were subject to the court's jurisdiction for the rendition of the judgment of April 14, 1894, and were bound by the judgment.

The judgments of the District Court and Court of Civil Appeals should be affirmed, and it is so ordered.

*Affirmed.*