COMMERCIAL UNION ASSURANCE CO. PLC, Sirius Insurance Co. Plc, Northern Assurance Co. Ltd., The Indemnity Marine Assurance Co. Ltd., and The Ocean Marine Assurance Co. Ltd., Appellants,

v.

Francisca SILVA, Individually and as Legal Heir for the Use and Benefit of All Persons Entitled to Recover for the Wrongful Death of Arnulfo Flores Silva; and Maria Calzoncin Cervantes and Gregorio Cervantes, Individually and as Legal Heirs for the Use and Benefit of All Persons Entitled to Recover for the Wrongful Death of Humberto Javier Cervantes Calzoncin, Appellees.

No. 04–98–00602–CV.

Court of Appeals of Texas, San Antonio.

Feb. 10, 1999.

Henry Lee Lewis, Jr., Griggs & Harrison, P.C., Houston, for Appellant.

Claudio Heredia, Knickerbrocker, Heredia, Jasso, Dovalina & Stewart, Eagle Pass, Thomas H. Crofts, Jr., Ellen B. Mitchell, Crofts, Callaway & Jefferson, P.C., San Antonio, for Appellee.

Before CATHERINE STONE, Justice, PAUL W. GREEN, Justice and KAREN ANGELINI, Justice.

## OPINION

CATHERINE STONE, Justice.

In this appeal we are asked to review the validity of substituted service on a surplus lines insurer. The appellant insurance companies (collectively "Commercial Union") challenge a default judgment, claiming that appellees (collectively "Silva") did not properly comply with service of process requirements under TEX. INS.CODE ANN. art. 1.36, § 12 (Vernon 1998). In this case of first impression, we find that Silva did not properly serve process on Commercial Union under the applicable statutes. As a result, we reverse the default judgment and remand the case to the trial court for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Arnulfo Silva and Javier Calzoncin were killed in a flash fire while in a structure designed by the Texas Recreation Corporation ("TRC"). Appellees, surviving family members of Silva and Calzoncin, brought a wrongful death suit against TRC. TRC then filed bankruptcy and the bankruptcy court approved a settlement between appellees and TRC, providing in part that if Silva prevailed in her action against TRC, Silva could seek recovery on the judgment from TRC's insur-

er, Commercial Union. Silva obtained a judgment for $1.6 million plus interest against TRC and subsequently brought suit against Commercial Union to collect under the insurance policy issued by Commercial Union to TRC.

Silva attempted service of process on Commercial Union by serving duplicate copies of the citation and the original petition on the Secretary of State. The citations provided the Secretary of State with the name and address of the agent for service of process as specifically designated in the insurance policy. The Secretary of State's certificates indicate that copies of the citation and petition were forwarded to Commercial Union at the address given and that each was returned with the notation "Forwarding Order Expired." These certificates were filed in the record on the same day the default judgment was rendered by the court below, January 15, 1998. The trial court entered a default judgment against Commercial Union for $1 million plus interest. Commercial Union maintains that it neither received notice nor acquired actual knowledge of the judgment until May 6, 1998.

### STRICT COMPLIANCE AND SUBSTITUTED SERVICE

■ To obtain a valid default judgment, the record must reflect strict compliance with the rules of civil procedure respecting the issuance of citation, the manner and mode of service, and the return of process. *See Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex.1994); *Harmon Truck Lines, Inc. v. Steele*, 836 S.W.2d 262, 263 (Tex.App.—Texarkana 1992, writ dism'd). "Failure to affirmatively show strict compliance with the rules of civil procedure renders the attempted service invalid and of no effect." *Harmon Truck Lines, Inc.*, 836 S.W.2d at 263.

### Service of Process on Eligible Surplus Lines Insurers

■ Under article 1.36 of Texas Insurance Code, any act of doing insurance business by an eligible surplus lines insurance company constitutes a binding and irrevocable appointment of the Secretary of State by that

insurer to be the lawful attorney for service of that insurer. The statute provides in relevant part as follows:

(a) Any act of doing an insurance business by an eligible surplus lines insurance company constitutes an irrevocable appointment of the Secretary of State by that insurer binding on it and its successors in interest to be the lawful attorney for service of that insurer. The Secretary of State may be served with any process, notice, or demand arising out of doing an insurance business in this state by that insurer....

(b) Any act of doing an insurance business by an eligible surplus lines insurance company signifies the insurer's agreement that legal process served under this section has the same legal force and validity as personal service of process in this state on that insurer or its successor in interest.

(c) Any policy issued by the surplus lines insurer or any certificate of insurance issued by the surplus lines agent must contain a provision stating the substance of this section and designating the Person to whom the *commissioner* is to mail process. This address must be supplied by the plaintiff in the citation that is served.

\* \* \* \* \* \* \* \*

(e) This section is cumulative of any other methods that may be provided by law for service of process on a surplus lines insurer, including Section 3 of this Article.

TEX. INS.CODE ANN. art. 1.36, § 12 (Vernon Supp.1998) (emphasis added).

In an apparent effort to comply with this statute, Silva served copies of the citation and original petition on Helen Lupercio, a designated agent for service for the Secretary of State, and provided the name and address for service of process on Commercial Union as listed in the insurance policy. Silva recognizes that section 12(c) refers to the "commissioner," and that section 1 of article 1.36 defines "commissioner" as the Commissioner of Insurance. Nonetheless, Silva contends that the reference is simply a hold-over from the previously enacted statute, and in any event, the statute does not preclude the

Secretary of State from mailing process to a defendant.

■ No case law exists concerning this particular application of article 1.36, section 12 of the Insurance Code. Nonetheless, a statute will be construed according to its plain language. *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985). Where there is no ambiguity, we will interpret a statute according to the plain meaning of the text. *See id.*

As noted, Silva contends that because section 12(c) does not say that *only* the Commissioner may mail process to the designated person in the policy, the Secretary of State may also mail process to this person. We reject this argument. A plain reading of section 12 does not allow for such inferences, especially where the Commissioner and Secretary of State are treated distinctly throughout the statute. *See* TEX. INS.CODE ANN. art. 1.36, § 1, et seq. Nor does the plain meaning of the statute allow us to rewrite the statute because "commissioner" may or may not be a hold-over from previous versions of the statute. *See RepublicBank N.A.*, 691 S.W.2d at 607 (quoting *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (Tex. 1920) and holding that courts are not responsible for omissions in legislation). Interpreting the statute according to its most literal meaning, section 12(c) does not apply to the Secretary of State, but only to the Commissioner of Insurance, and thus, any forwarding instructions in this section do not apply.

Silva notes that under the general citation statute governing service of process on the Secretary of State, service may be effected by certified mail, return receipt requested, or by "any other method authorized by statute or the Texas Rules of Civil Procedure for service on the secretary of state." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.026 (Vernon 1997). Relying on this statutory language, Silva claims that service can be accomplished in accordance with TEX. INS.CODE ANN. art. 1.36, § 8, which allows process to be served on the Secretary of State by leaving it at the office of the Secretary of State. This claim is without merit. By its own terms article 1.36, section 8 is inapplicable to eligible surplus lines insurers. *See id.* at 8(b). Consequent-

ly, section 8 cannot provide authority for the method of service attempted by Silva.

### Long–Arm Statute

■ While section 12 of article 1.36 does not provide a method for the Secretary of State to effect service on a defendant, we reject Commercial Union's contention that section 12 fails to authorize an alternative method of substituted service upon the Secretary of State. To follow this logic would render section 12(a) a nullity. Additionally, section 12(e) provides that section 12 is cumulative of any other methods that may be provided by law for service of process on a surplus lines insurer. This language alone leads to the conclusion that the Legislature intended section 12 to authorize substituted service on the Secretary of State.

■ Because section 12 does not contain express provisions regarding how the Secretary of State should forward process, we turn to the long-arm statute which generally governs substituted service of process on the Secretary of State. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.044 (Vernon 1997). The long-arm statute requires that "if the secretary of state is served with duplicate copies of process for a non-resident, he shall require a statement of the name and address of the *nonresident's home or home office* and shall immediately mail a copy of the process to the nonresident." *See id.* § 17.045 (emphasis added).

■ In Silva's original petition, she states "pursuant to Texas Insurance Code, Article 1.36 section 12 and the surplus line insurance policy referenced below, the insurer has designated MESSRS. MENDES & MOUNT, 3 Park Avenue, New York, N.Y. 10016, as the person on whom the Secretary of State may mail to that entity's last known home office, return receipt requested, a copy of the citation and Original Petition." This is the agent and the address to which the Secretary of State forwarded the citations. As previously noted, however, the citations were returned with the notation that the forwarding order had expired. We take judicial notice of the Texas Department of Insurance records which reflect the new address of Commercial Union's agent. *See* TEX.R. EVID. 201. Further, Silva does not dispute that Commercial

Union had previously informed the Commissioner of Insurance of the agent's new address, as it was required to do. The Secretary of State apparently was not notified of the new address, and there is no indication that Texas law required Commercial Union to report the new address to the Secretary of State. Thus we have a situation in which the insurance company did what was required of it by notifying the Commissioner of the new address for its agent, and the insured (or the insured's judgment creditor) did what the policy directed her to do by asking that service of process be forwarded to the agent at the address specifically listed in the insurance policy. While Silva's reliance on the policy is understandable, it proved fatal to her efforts to obtain proper service. The policy was several years old and expired by the time suit was initiated, and the information in the policy was out-dated. The current information was available from the appropriate authority—the Commissioner of Insurance. Because Silva failed to show that she provided any of the defendants' home or home office addresses, process was not properly served.

Silva argues that strict compliance with the long-arm statute is not required. Due process only requires that the notice be forwarded in a statutorily prescribed manner that is reasonably calculated, under the circumstances, to apprise the defendant of the pending action. *See Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 84, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988); *Sgitcovich v. Sgitcovich*, 150 Tex. 398, 241 S.W.2d 142, 146 (Tex.1951). Thus, even though strict compliance with the rules of civil procedure is required, where no provision is set forth exactly for the situation at hand, Silva argues that using the address listed in the policy is reasonably calculated to notify the defendant of the action.

Texas courts have strictly enforced compliance with service of process statutes. *See World Distributors, Inc. v. Knox*, 968 S.W.2d 474, 478 (Tex.App.—El Paso 1998, no pet.) (finding service defective under section 17.045 where nothing in the record affirmatively established that the address provided to the Secretary of State was the home office of the defendants); *Whiskeman v. Lama*, 847 S.W.2d 327, 329 (Tex.App.—El Paso 1993, no

writ) (holding that process was insufficient where there was nothing in the record to affirmatively show that the address provided was the home address); *Verges v. Lomas & Nettleton Financial Corp.*, 642 S.W.2d 820, 823 (Tex.App.—Dallas 1982, no writ) (holding that under the former long-arm statute "last known address" was not the equivalent of the "home or home office"). Notably, these decisions reflect "a strong policy that defendants ought not to be cast in personal judgment without notice" and that failing to provide the address specified in the applicable statute is simply ineffective service of process. *See Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 97 (Tex.1973). Thus, we hold that providing the Secretary of State with the address listed in the policy did not comply with the service of process requirements under TEX. INS.CODE ANN. art. 1.36, § 12(a) and the general long-arm statute. In the absence of proper service of process, the default judgment is void.

In light of our holding, we need not address Commercial Union's remaining issues in which it contends that none of the defendants actually received process forwarded by the Secretary of State and that proof of service by the Secretary of State had not been on file for the requisite period of time.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.