

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Texas Board of Pharmacy
911 Insurance Building
Dallas, Texas

Dear Sirs:

Attention: Walter Coupins, Jr.,
Secretary

Opinion No. O-4530
Re: Section 17, Texas Pharmacy Law -
Manufacturer of drugs and medicines.

We are in receipt of your letter in which you ask our opinion as to the interpretation to be given Section 17 of the Texas Pharmacy Law as it relates to a manufacturer of drugs and medicines. You state that you have heretofore operated in the belief that any person who repackaged drugs or medicines from bulk quantities under a brand name or label would be considered to be a manufacturer and as such required to obtain a manufacturer's permit from the Texas Board of Pharmacy. You ask to be advised of the precise definition to be given to the phrase "manufacturer of drugs and medicines" as used in Section 17.

The present Texas Pharmacy Law appears as Article 4542a, Vernon's Annotated Civil Statutes, and was enacted in 1929. (Acts 1929, 41st Leg., ch. 107, p. 242) It was amended in 1935. (Acts 1935, 44th Leg., ch. 98, p. 251) The provisions of the Revised Civil Statutes of 1925 (Articles 4529 - 4542 - Chapter 8 of Title 71) were specifically repealed. Section 17, as presently in effect, reads as follows:

"Sec. 17. Every person, firm, or corporation desiring to continue operating a retail pharmacy or drug store in this State, as the same is defined herein, and every manufacturer of drugs and medicines as defined herein, after the passage of this Act shall procure from the Board a permit for each store or factory to be operated by making within six (6) months appli-

THIS COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED

cation to the Board upon a form to be furnished by said Board, setting forth under oath ownership and location, and the name, with the certificate number, of the pharmacist registered in this State, or physician, dentist, veterinarian or chiropodist who is to be continuously employed by the pharmacy or drug store or factory, provided that the Board may in its discretion refuse to issue such permit to such applicant unless furnished with satisfactory proof that said applicant is engaged in the business of conducting a pharmacy, drug store or factory for the purpose of manufacturing drugs; provided further that at any time after the issuance of a permit by the Board to such applicant, the Board may revoke or cancel the permit when satisfactory proof has been presented to such Board that said permit holder is not conducting a bona fide pharmacy or drug store. The permit provided for herein shall be issued annually by the Board upon a receipt of proper application accompanied by a fee of Two Dollars ($2); this permit to be displayed conspicuously at all times in the store or factory of original issue. Every person, firm or corporation desiring to open a new pharmacy, drug store, or factory shall procure the permit before mentioned, before commencing business and the same discretionary powers may be used by the Board in passing upon such application. No more than one store or factory may be operated under one permit. In case of change of personnel of registered pharmacists, the Board shall be notified of such change within ten (10) days; provided that the same pharmacist's name shall not appear on more than one (1) permit." (Emphasis ours)

It will be observed that the above section requires the payment of a fee and the procurement of a permit by every person operating "a retail pharmacy or drug store in this State, as the same is defined herein," and in addition, "every manufacturer of drugs and medicines as defined herein." Section 19 of the act defines "pharmacy" and "drug store." Section 20 defines a "pharmacist." There is no definition of "manufacturer of drugs and medicines" in any portion of the act.

We have traced the legislative history of the original enactment from the time of its introduction as Senate Bill No. 49 of the 41st Legislature through its course in both houses of the 41st Legislature. It was amended on several occasions, and as finally passed was the product of a second conference committee, but at no stage was the word "manufacturer" nor the phrase "manufacturer of drugs and medicines" defined within the language of the bill. We have also failed to find such a definition within the terms of the amendatory act of 1935. There was no usage of the words in the statutes relating to pharmacy prior to 1929.

In 1931, the 41st Legislature amended Article 4469, Revised Civil Statutes, and incorporated therein a definition of "manufacture" and "manufacturer" of foods and drugs. That article, however, applies to registration of such manufacturers with the State Health Officer and, as we view it, has no relation to the State Board of Pharmacy. Article 4469, as amended, reads as follows:

"All manufacturers of foods and drugs doing business in the State of Texas and all such persons, firms, corporations, who import or bring into the State of Texas, for sale or distribution, from any place not a part or possession of the United States any article of food, drug or chemical, shall annually register with the Director and pay him a fee of One ($1.00) Dollar for such registration on or before the 1st day of September. Where a person, firm or corporation operates more than one establishment, then a separate registration and fee shall be required for each establishment operated.

"The term 'manufacture' as used in this Article shall mean the process of combining or purifying articles of food or drugs and packaging same for sale to the consumer, either by wholesale or retail, provided however, that a pharmacist, registered under the laws of this State, shall not be deemed a manufacturer, when he fills a regular licensed physician's prescription, or when such pharmacist compounds or mixes drugs or medicines in his professional capacity. Any

person, firm or corporation who represent them-
selves as responsible for the purity and the
proper branding of any article of food or drug,
by placing or having placed their name or names
and address upon the label of any food or drug,
shall be deemed a manufacturer and included
within the meaning of this Article. Any per-
son, firm or corporation who imports into this
State from any place not within the continental
limits of the United States, any article of
food or drug, shall be importers within the
meaning of this Article.

"This Article shall be cumulative of all
other laws on the subject matter, but where any
other law is inconsistent with the provisions
hereof, this Article shall control. Acts 1911,
p. 76; Acts 1931, 42nd Leg., p. 265, ch. 159,
§ 1." (Emphasis ours)

We do not believe the provisions of Article 4469,
supra, may be invoked in aid of the obvious omission in the
Texas Pharmacy Law. We think this is true not only because
the legislation is directed to a different sort of regis-
tration, but also because of the restrictions placed by
the employment of the language that the defined words are
to be applied "as used in this Article" and "included with-
in the meaning of this Article."

The fact that a word or phrase is defined in one
act does not necessarily determine the meaning to be as-
cribed its use in another act dealing with a different sub-
ject. A somewhat similar situation was before the Austin
Court of Civil Appeals in the case of Gulf, C. & S. F. Ry.
Co. v. Woods, 262 S. W. 229. In that case the court was
considering the applicability of one statute to clarify
the meaning of another with reference to the duty of rail-
roads with respect to crossings. We quote the following:

"It is the contention of the appellant,
first, that under article 6485 the language
'such crossing' means only that portion of a
public road crossing within and upon the right
of way of a railway company, and, second, that
article 6494, being a subsequent enactment
on the same subject, expressed and defined
the legislative intent as to all public road
crossings, and therefore limited the railway
company's liability under article 6485 strict-
ly to its right of way.

"We will first consider appellant's second contention. We cannot agree with it. Article 6485 was a portion of a general act authorizing the formation of railway corporations in Texas and defining their powers and duties. The caption to the act so states. It is general in its terms, and was clearly intended for the protection of property owners and the public as far as was reasonably possible against damage, expense, or inconvenience caused by the original construction of a railroad. It necessarily applies primarily to highways, streets, turnpikes, etc., already established and in use at the time of construction of a railroad across them, and is one of the regulations imposed upon the railway company in the exercise of its rights under section 1, art. 10, of the Texas Constitution. Article 6494, on the other hand, deals specifically with all that part of the railway right of way over which a public road crosses regardless of whether all of it is actually used physically as a crossing or not and regardless of when the public road was constructed whether before or after the railroad was built, and specifically fixes the duty of the railway company to keep it in a proper condition for public use, provides penalties, etc. We think it merely supplements the duty imposed on the railway company by article 6485, but does not supersede or limit the scope of that article, and that whatever duties were originally imposed by said article 6485 still exist; and such additional duties, if any, as may have been created by article 6494 are added thereto. In the passage of article 6494, the Legislature was dealing with a different subject, with a different purpose, and from an altogether different viewpoint than that governing the Legislature in the original passage of article 6485, and we think it would be a strained construction of its intent to hold that, without any reference of any kind in the latter act to the former, the Legislature intended by the passage of what is now article 6494 to define the meaning of article 6485."

Texas Board of Pharmacy, Page 6

It appears to us that in passing the Texas Pharmacy Law the Legislature intended to include within its terms a certain and limited statutory definition of the meaning of the phrase "manufacturer of drugs and medicines." We are unable from the context of the language or legislative history to determine the intent. As said by the Supreme Court of Texas in the case of Simmons v. Arnim, 110 Tex. 309, 220 S. W. 66:

"Courts must take statutes as they find them. More than that, they should be willing to take them as they find then. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain."

Since neither the terms "manufacturer" nor "manufacturer of drugs and medicines" are defined by the statute under inspection, we have made an investigation to determine whether the interpretation you say the Pharmacy Board has been heretofore using falls within the commonly accepted definition of the words. We believe the following quotation from the case of State v. Tichenor Antiseptic Co., 116 La. 685, 43 So. 277, to be appropriate:

"A 'manufacturer' . . . is one who gives new shapes, new qualities, new combinations, to matter which has already gone through some artificial process; State v. Sugar Refining Co., 108 La. 603, 32 So. 965; City v. LeBlanc, 34 La. Ann. 597; City v. Ernst, 35 La. Ann. 746.

"Nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct

action of the human hand, from chemical processes derived and directed by human skill, or by the employment of machinery, . . . are now commonly designated as 'manufactured.' Carlin v. Western Assur. Co., 57 Md. 526, 40 Am. Rep. 440.

"The production of articles for use from raw or unprepared materials, by giving those materials new forms, qualities, properties, or combinations, whether by manual labor or machinery. Century Dict., verbo 'manufacture'."

In view of the above, it is our opinion that one who merely repackages drugs or medicines from bulk quantities would not be a manufacturer within the meaning of the Texas Pharmacy Law, even though such repackaged article bears a brand name or label. Such a person could not, therefore, be required to obtain a manufacturer's permit from the Texas Board of Pharmacy.

APPROVED AUG 15, 1942

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Benjamin Woodall
Assistant

BW:GO

