## PETTUS & LOTT v. J. H. DAWSON ET AL.

### No. 6912.

1.  **Mother's Right of Inheritance from Her Bastard Son.**—A bastard died in·Texas leaving neither wife nor child. A bounty land warrant was issued in his name April 11, 1838, and in 1851 patent issued for the land sued for in name of heirs of the bastard. His mother residing in Kentucky, under the laws then governing in Texas took the land by inheritance.

2.  **Alienage.**—Descent was cast in 1836 upon the mother, then an alien. By Act of Congress in 1840 aliens were allowed nine years in which to take possession and dispose of property inherited. Annexation before the expiration of that time removed any disability in the mother residing in Kentucky to take as heir of her son.

3.  **Rental Value.**—It was not error to admit testimony to opinion valuation of arid land situated within a large pasture inclosure of the defendant, the witness testifying as to its value to the defendants, at same time declaring that he did not know the land otherwise than its general character.

APPEAL from Karnes. Tried below before Hon. H. CLAY PLEASANTS.

The opinion states the case.

*Brown & Beasley,* for appellants.—1. The court erred in concluding that under the laws in force in Texas in the year 1836 a mother residing in the State of Kentucky would inherit the property of her bastard son dying in Texas in 1836, leaving no wife, child, or children, or descendants of either, the said property being real estate and being situated in Texas. The mother of a bastard who died in Texas in 1836 without wife or descendants could not inherit his property situated in Texas unless said bastard had been legitimated. Johnson's Civil Law of Spain, pp. 114, 119, 129, 130, 72, 73; Land Laws of California, Oregon, and Texas, vol. 1, pp. 115, 116; Hall's Mexican Law, sec. 3136; 2 Domat's Civil Law, sec. 2497, and remarks following; Id., sec. 2508; 2 Kent's Com., p. 229, div. 213.

2. The property of a person dying in Texas before the 17th of March, 1836, and situated in Texas, could not be inherited by an alien heir. Heirs of Holliman v. Peebles, 1 Texas, 714–719; 2 Domat's Civil Law, secs. 2456, 2502, 2508, et seq.

3. The court erred in concluding that under the law in force in this State in the year 1851 a mother residing in the State of Kentucky would inherit and take as heir the property of her bastard son who died intestate in the State of Texas in 1836, leaving no wife or children, or descendants of either, the property being real estate situated in the State of Texas, and in said year 1851 being conveyed by patent out of the State of Texas, and by terms of said patent being conveyed to the heirs of said bastard, the said mother at said date not being his heir by the laws of Texas. Under the laws governing successions in the

State of Texas in 1851 the mother of a bastard could not be his heir. Hart. Dig., arts. 127, 587, 562; Stevenson's Heirs v. Sullivant, 5 Wheat., 621; Scoggins v. Allen, 2 Dana, 363; Sutton v. Sutton, 8 S. W. Rep., 337 (Ky. case).

*F. R. Graves*, for appellees.—1. The court did not err in holding that a mother residing in Kentucky would inherit the real property of her bastard son dying in Texas in 1836, leaving no wife or descendants surviving, and the real property situated in Texas. Sayles' Early Laws of Texas, vol. 1, art. 124, secs. 4, 5, 6; Schmidt's Laws of Spain and Mexico, p. 268, arts. 1252, 1254, and authorities there cited; White's New Recopilacion, p. 101 (side page 107), and p. 4 of same work; 2 Kent's Com., pp. 173, 179, or Lecture No. 29, subdiv. 3.

2. The law of Spain, or civil law as modified by Spain and Mexico, was the law in force in Texas in 1836, and is therefore the law by which this cause should be determined.

3. The heir of one who died in Texas after the adoption of the Constitution on the 17th of March, 1836, even though an alien, would have nine years after the issuance of the certificate to take possession of or sell the property. Cryer v. Adams, 11 Texas, 183.

GARRETT, PRESIDING JUDGE, *Section B.*—This is a suit of trespass to try title, brought March 1, 1887, by the appellees to recover a tract of land situated in Karnes County, containing 1280 acres, patented to the heirs of Elijah L. Garrett in the year 1851. Defendants pleaded not guilty, and there was trial and judgment in favor of the appellees for the land and for rents.

Elijah L. Garrett, the grantee, died in Texas in 1836, leaving no wife or child or children surviving him. He was the bastard son of Catherine Leslie, who was living at the time of his death, and resided then in the State of Kentucky, and resided in said State continuously afterward until the year 1884, when she died. Elijah L. Garrett was born out of wedlock, and there was no subsequent legitimation by marriage. The land in controversy was patented to him by virtue of bounty warrant No. 2248, issued to him on the 11th day of April, 1838. Plaintiffs are the legitimate heirs of Catherine Leslie, who, after the birth of said Garrett, married Reuben Dawson, a person other than the father of the said Garrett.

The main questions in this case must be disposed of as arising under the civil law of Spain and Mexico, which prevailed in Texas at the time of the death of the said Elijah L. Garrett. Reese v. Hicks, 13 Texas, 164. There was but one rule at common law. All illegitimate children were bastards; and a bastard was regarded as the first of his family, nullius filius, and was incapable of either receiving or trans-

mitting an inheritance except to his own legitimate children. But the civil law, though originally holding this same rule, became relaxed, and out of this relaxation grew up a distinction between illegitimate children, which gave rise to much uncertainty about what at different periods was the law. "The Roman law distinguished between the off-spring of that concubinage which it tolerated as an inferior species of matrimony and the spurious brood of adultery, prostitution, and incest." 5 Wheat., 262, note to Stevenson v. Heirs of Sullivant. A distinction was made between offspring the issue of frailty and prostitution. The offspring of concubines, who resided in the same house with the father, was called "naturales," and could be legitimated in one of the various modes provided by law. Care should be taken not to confound the meaning of the different words used. At common law the word "bastard" applied to all illegitimate children. Under the civil law, while it was sometimes loosely so applied, there is quite a distinction. We will not follow the adoption of the civil law in the Gothic countries of France and Germany further than to notice that in France a bastard could not inherit at all unless legitimated by the marriage of his father and mother. 5 Wheat., 267; 2 Domat's Civil Law, sec. 2510. The mode of legitimation by letters patent from the prince was abrogated by the Code Napoleon.

As adopted in Spain, the civil law was modified and provided methods by which natural children could be legitimated so as to inherit from their fathers. In the Spanish civil law the word "bastardo" meant and was applied to the son of fathers who could not contract matrimony when the son was begotten. Salva-Diccionario, in verbo Bastardo. Bastards as thus defined could not inherit from the father; nor could they become legitimated. But such as were not "danado," or the offspring of an adulterous, sacrilegious, or incestuous intercourse, were permitted to inherit from the mother. Escriche-Diccionario, in verbo Bastardo. Here we find another distinction taken from the Roman civil law, which called such offspring "spurii," or spurious children. Id., in verbo Espurio.

We use the word "bastard" indiscriminately, but under the civil law Elijah L. Garrett would be the *spurious* offspring of his mother Catherine Leslie. Although, as before stated, the word "bastardo" was used in the Spanish civil law ordinarily as applying to any illegitimate son, still the character of *bastard* offspring capable of inheriting from the mother was called "espurio," or spurious, the class "danado y punible ayuntamiento" being excluded. The right of the spurious bastard ("bastardo espurio") to inherit from his mother is fully recognized in the Spanish civil law. Escriche-Diccionario, in verbo Heredero, p. 760. And the right is reciprocal. Id. The law conferring this right is omitted from Moreau and Carleton's translation of "Par-

tidas" as not applicable to Louisiana, where bastards were excluded from inheritance by the civil code. But it remained a part of the Spanish civil law as introduced into Mexico. Schmidt's Civil Law of Spain and Mexico, arts. 1252, 1254. We think that the difficulty in determining the question in this State arises chiefly from want of familiarity with a system of foreign laws, and the fact that we do not readily distinguish between the French civil law as adopted in Louisiana and the Spanish civil law as adopted in Mexico, all of which having its origin in the Roman civil law came modified by the countries through which it passed. Although it is now more than half a century since the common law was substituted for the civil law in this State, this is the first time the precise question has been before the Supreme Court. We are of the opinion that Mrs. Leslie could and did inherit from her bastard son.

With regard to the question of alienage presented by appellants, we must presume that the land having been granted by virtue of a certificate or bounty warrant which could only issue for twelve months' service in the army of the Republic of Texas, the grantee must have served that length of time, and consequently must have died later than March 17, 1836, the date of the adoption of the Constitution of the Republic. The organization of the army was provided for in the plan for a provisional government adopted by the Consultation November 7, 1835. At the time of the death of her son Mrs. Leslie was an alien, being a resident of the State of Kentucky, and as such could not inherit from him; but by the Constitution of 1836 she had a reasonable time to take possession of and dispose of the land, in a manner to be afterward pointed out by law. Such a law was passed by the Congress of the Republic in 1840, and aliens were allowed nine years in which to take possession of and dispose of such inheritances. Before the nine years had elapsed Mrs. Leslie became a citizen by the admission of Texas into the Union. Hence the question of alienage is eliminated.

We think the objection to the certificate of the officer taking the deposition of the witnesses in Kentucky is not tenable.

Evidence was admitted by the court as to the rental value of the land, which was objected to by the defendants, and the ruling of the court is assigned as error. The witness Butler was permitted to testify, as to the rental value of the land, that it was worth to the defendants four cents an acre per annum. Taken alone this would be obnoxious to the objection. Butler was the only witness before the court as to rental value. He testified that he did not know the rental value of the land; but his testimony showed why he could not fix it. He stated that he was acquainted with the land, which was situated in a dry section of the country, with no water on it, and was inclosed in a pasture of some 30,000 to 40,000 acres of land belonging to the defendants. He then stated that it was worth four cents an acre per annum to the de-

fendants.  We think under the facts the evidence was properly admitted.

There being no error in the judgment, we report it for affirmance.

*Affirmed.*