The STATE of Texas, on Behalf of Itself and Jane Doe, Appellants,

v.

Willie LAVAN, Jr., Appellee.

No. 3–90–082–CV.

Court of Appeals of Texas, Austin.

Dec. 19, 1990.

Rehearing Overruled Jan. 30, 1991.

Jim Mattox, Atty. Gen., Charles G. Childress, Asst. Atty. Gen., Child Support Enforcement, Austin, for appellants.

Mark M. Humble, Cameron, for appellee.

Before POWERS, GAMMAGE and CARROLL, JJ.

POWERS, Justice.

On behalf of Jane Doe and itself, the State sued Willie Lavan, Jr. in a statutory cause of action to establish his paternity respecting Jane's child, X. Tex.Fam.Code Ann. § 13.01(a) (Supp.1991). The trial court sustained Lavan's motion for summary judgment, ordering that the State and Jane take nothing. They appeal. We will affirm the judgment.

## THE CONTROVERSY

During her marriage to John Doe, Jane bore two children whom we shall designate X and Y. John and Jane were divorced in 1986. The decree provided expressly for Y's support, as a child of the marriage, but omitted any mention of X.

To establish that Lavan is X's biological father, and therefore obligated to pay child support, Jane and the State brought against Lavan in 1988 the statutory cause of action authorized in § 13.01(a) of the Code:

A suit to establish the parent-child relationship between *a child who has no presumed father* and the child's biological father may be brought by the mother ... or by any other person or governmental entity having standing to sue under Section 11.03 of this code.

(Emphasis added). Lavan moved for summary judgment on the ground that X *had* a "presumed father" as a matter of law, namely John, who was married to Jane when X was conceived and born; and, for that reason, a § 13.01(a) action could not be brought with respect to X, as the statute explicitly limits such actions to situations in which a child has no presumed father.

The trial court rendered summary judgment on Lavan's motion. Jane and the State appeal. For convenience, we shall refer mainly to the State in the discussion that follows.

## FILIATION PROCEEDINGS UNDER FAMILY CODE § 13.01(a)

At common law, a child was "illegitimate" or a "bastard" when born to an unmarried woman or to a married woman and a man not her husband. The law recognized no system of rights between an illegitimate child and either parent because in legal contemplation he was the child of no one ("filius nullius") or of the people generally ("filius populi"). Thus, the child was not entitled to receive support or to inherit from either biological parent. By judge-made law, these disabilities of illegitimacy were removed to an extent by permitting the child to inherit through his mother; there was evidently no similar evolution of the common law giving rise to any rights or obligations between an illegitimate child and his biological father. *See generally Pettus v. Dawson*, 82 Tex. 18, 17 S.W. 714 (1891); Speer, Law of Marital Rights in Texas § 101, at 137–38 (3d ed. 1929); Tiffany, Law of Persons and Domestic Relations § 113 (1896); Heard, *Illegitimate Children —Father's Duty to Support*, 6 Baylor L.Rev. 520 (1954).

In the case of an illegitimate child born to a married woman and her paramour, the common law did, however, attempt in another way to protect the child from the

legal disabilities and the stigma of illegitimacy—the common law erected a presumption that the wife's husband was the child's biological father. In some jurisdictions, the presumption was almost irrebuttable; in others it was simply made difficult of contrary proof. The latter was the case in Texas, where the common law held originally that the mere testimony of the husband or wife could not overcome the presumption, *Esparza v. Esparza*, 382 S.W.2d 162, 168 (Tex.Civ.App.1964, no writ), a rule modified subsequently by a holding that the presumption could be overcome by the testimony of either when it showed the husband's impotency or his want of "access." *Davis v. Davis*, 521 S.W.2d 603, 608 (Tex.1975).

■ In many jurisdictions, the legislature intervened to protect illegitimate children by enacting statutes that authorized "filiation proceedings," or statutory causes of action to establish a putative father's biological parentage and a resulting statutory duty to support his illegitimate child. In 1975, for example, the Texas Legislature enacted § 13.01 of the Family Code for that purpose. 1975 Tex.Gen.Laws, ch. 476, § 24, at 1261–62 (Tex.Fam.Code Ann. § 13.01, since amended.)[1] Section 13.01(a) authorizes the statutory cause of action to be brought for the purpose of establishing "the parent-child relationship between a child *who has no presumed father* and the child's biological father." Succeeding sections prescribe certain pretrial steps (§§ 13.02–13.05), competent evidence (§ 13.06), necessary parties (§ 13.07), the effect of court decrees (§§ 13.08–13.09), voluntary paternity proceedings, (§§ 13.21–13.24), venue (§ 13.41), and certain collateral or

---

1. Before 1973, the common law and statutes of the State of Texas provided that a biological father was legally obliged to support only his legitimate children, whatever might be his moral obligation to support his illegitimate children. And absent a statute imposing the duty of support with regard to the biological father's illegitimate children, he had no such legal duty. *Lane v. Phillips*, 69 Tex. 240, 6 S.W. 610, 611 (1887); *Home of Holy Infancy v. Kaska*, 397 S.W.2d 208, 210 (Tex.1965).

In 1973, however, the Supreme Court of the United States held that the Texas statutory and common-law rules violated the equal protection clause of the 14th Amendment. "[O]nce a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." *Gomez v. Perez*, 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973). Thus, the Court created a *constitutional* right in illegitimate children, to receive such support from their biological fathers, so long as Texas afforded the statutory and common-law right to legitimate children. The holding of *Gomez* did not mean, however, that Texas "must adopt procedures for illegitimate children that are coterminus with those accorded legitimate children," and variations were permissible "to the extent they are substantially related to a legitimate state interest." *Mills v. Habluetzel*, 456 U.S. 91, 97, 99, 102 S.Ct. 1549, 1553, 1554, 71 L.Ed.2d 770 (1982).

Immediately following *Gomez*, the Texas legislature enacted a statute under which a biological father might *voluntarily* establish his paternity and resulting obligation to provide financial support to his illegitimate child. Smith,

*Commentary on Title 2 of the Texas Family Code*, 5 Tex.Tech L.Rev. 389, 418–19 (1974). Two years later, the legislature enacted the first statute that provided for statutory proceedings to be brought against a biological father to establish a parent-child relationship, and an attendant duty to support an illegitimate child, irrespective of the biological father's wishes. 1975 Tex.Gen.Laws, ch. 476, § 24, at 1261. The statutory proceeding is found now in §§ 13.01–13.09 and §§ 13.41–13.44 of the Family Code.

In *Texas Dept. of Human Resources v. Hernandez*, 595 S.W.2d 189 (Tex.Civ.App.1980, writ ref'd n.r.e.), *overruled*, *In Interest of J.A.M.*, 631 S.W.2d 730 (Tex.1982), the court concluded in a footnote that a proceeding under Chapter 13 was not a "filiation proceeding." The court reasoned that a Chapter 13 suit "would entail legitimation of the child," but "filiation would not necessarily import legitimacy." *Hernandez*, 595 S.W.2d at 190, n. 1. We respectfully disagree with the idea that an action under § 13.01(a) is not a "filiation proceeding."

The purpose of a filiation proceeding is to establish *parentage* and the putative father's resulting duty to support his biological child, equalizing thereby the burden of support as between the mother and father. Such a proceeding is not an action in rem which fixes the status of the child as to the whole world. *State v. Morrow*, 158 Or. 412, 75 P.2d 737, 744 (1938). Nothing in the Family Code indicates that a Chapter 13 proceeding "would entail legitimation of the child," although it would establish the parent-child relationship "*as if* the child were born to the father and mother during marriage," as stated in § 13.09 (emphasis added). Accordingly, we shall refer to a Chapter 13 proceeding, brought under § 13.01, as a filiation proceeding.

ancillary matters (§§ 13.42–13.44). The State brought such a cause of action in the present case.

◼ The State alleged in its petition that Lavan was the "biological father" of X, but the State also alleged that John Doe was X's "presumptive legal father ... because he was married to the mother ... at the time the child was conceived and/or born...." Under this pleading and § 13.01(a), the statutory cause of action cannot be established as a matter of law, for the statutory action is only available "to establish the parent-child relationship between a child *who has no presumed father* and the child's biological father...."

Notwithstanding the statutory language, however, the State contends actions under § 13.01(a) are *not* limited to cases in which a child "has no presumed father." The State infers from the "legislative history" of § 13.01(a) that the statutory expression —"a child who has no presumed father"— was included in the 1989 amendment, not for the purpose of limiting the circumstances in which the cause of action may be established but merely to avoid the opprobrium of the expression it replaced: "illegitimate child of a man." Such being the intent behind the reference to "a child who has no presumed father," the State infers that the statutory cause of action authorized in § 13.01(a) is available even in behalf of a child who *has* a presumed father, as X does in the present case. The State makes this contention notwithstanding the violence it does to the statutory language.

◼ Section 13.01(a) is *unambiguous* in limiting the availability of the cause of action to cases in which a child has no presumed father. The limitation being unambiguous, we should not refer to "legislative history" as a basis for erasing through "interpretation" the explicit qualification laid down by the legislature as part of the statutory cause of action. *City of Port Arthur v. Tillman*, 398 S.W.2d 750, 752 (Tex.1965); *Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99, 109 (1961); *Cf.*, Tex.Gov't Code Ann. § 311.023 (1988).[2] We cannot adopt the State's theory without contradicting or adding to § 13.01(a) and changing its meaning to include something that the words of the statute cannot reasonably sanction or sustain. *Commonwealth of Massachusetts v. United N. & S.D. Co.*, 140 Tex. 417, 168 S.W.2d 226, 229 (1942); *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (1920).

Chapter 13 contains no language that will support the inference for which the State contends. If the legislature had intended the cause of action to be authorized *irrespective* of whether a child has a presumed father, we believe that body would not have composed § 13.01(a) in language that expresses so unambiguously the *opposite* intention: "A suit *to establish* the parent-child relationship between a child who *has no presumed father* and the child's *biological* father."

Moreover, the purpose of the statutory cause of action and the rationale of limiting it to cases where a child has no presumed father are self-evident, reasonable, and contrary to the State's theory. The purpose of the statutory cause of action is "to establish the parent-child relationship" and the attendant system of rights and obligations between parent and child, including the parent's obligation to support the child. There is no necessity to *establish* a parent-child relationship in cases in which a child *has* a presumed father, for in such cases that relationship *already exists* by operation of law between the presumed father and his child. And to this already established relationship, the law imputes the full system of legal rights and obligations be-

---

2. In the text of our opinion, we find a reasonable basis for the legislature's unambiguous language limiting filiation proceedings under § 13.01(a) to cases where a child has no presumed father: there is no necessity for such a proceeding when a child has a presumed father. Thus, the unambiguous language of the statue, coupled with a reasonable basis for what it provides, supplies the strongest possible evidence of what the legislature intended by its statute. In such cases, we should prefer to base our interpretation on an "analysis of the statute instead of ... psychoanalysis of [the legislature]." *United States v. Public Utilities Commission*, 345 U.S. 295, 319, 73 S.Ct. 706, 719, 97 L.Ed. 1020 (1953) (Jackson J., concurring).

tween parent and child, including the presumed father's obligation to support the child.

■ If the presumed father wishes to *disestablish* the parent-child relationship resulting from the presumption and the attendant system of legal rights and obligations, he must do so in *another* proceeding "affecting the parent-child relationship," in which proceeding he defeats the presumption by showing and establishing that he is not *in fact* the child's biological father. Purdom, *Texas Family Code With Commentaries: Chapter 13. Determination of Paternity*, 21 Tex.Tech.L.Rev. 1277, 1282 (1990). The cause of action provided by § 13.01(a) is designed, not for his benefit, but for the benefit of a child who is outside *any* father-child relationship until that child establishes such a relationship with his biological father, at which time the law imputes to the relationship the system of legal rights and obligations between parent and child.

## DISESTABLISHING A PARENT–CHILD RELATIONSHIP AND A HUSBAND'S PRESUMED BIOLOGICAL PATERNITY

Chapter 12 of the Family Code does not establish a filiation proceeding of any kind. It provides rather for the reverse, as indicated below. In §§ 12.01 and 12.03, the legislature specified the circumstances which give rise to a legal relationship between a child and a parent, irrespective of whether the child's biological parents are married. The relationship may be established as to the biological mother by proof that she gave birth to the child; as to "the biological father as provided by this code"; as to "an adoptive parent by proof of adoption"; and in cases of artificial insemination, by proof that the husband consented

in an acknowledged writing that any resulting child would be his as well as his wife's child. Section 12.04 defines the rights, privileges, duties, and powers of a parent concerning his or her child, and § 12.05 defines the rights of a living child born after an abortion or premature birth.

Section 12.06 provides for one instance in which a presumed biological father may be proved in fact not to be such, and therefore not subject to the system of rights and obligations between parent and child defined in § 12.04. The single instance applies in cases in which a *husband* is presumed to be the father of a child born to his wife under § 12.02(a)(1). Section 12.06 provides that the contrary may be established by either the husband or the wife "[i]n any suit affecting the parent-child relationship, *other than* a suit under Chapter 13 of this code." In such instances, either the husband or wife may deny the husband's biological relationship by an express statement in a pleading, followed by his or her proof of the fact through the "pretrial proceedings" and "scientifically accepted paternity testing as required in a suit under Chapter 13 of this code." Under § 12.06, the burden of proof lies upon the party who denies the husband's biological relationship.

The substance of § 12.06 is to provide a means of *disestablishing* a *husband's* presumed paternity, and the parent-child relationship that results from that presumption. Nothing in Chapter 12 indicates that this procedure for defeating the statutory presumption applies in a § 13.01(a) filiation proceeding, which has, of course, the opposite purpose of *establishing* the parent-child relationship with respect to any putative biological father, whether married or not.[3]

We mention the foregoing because the State attempts in another way to avoid the

---

**3.** The present case is distinguishable from *In the Interest of S.C.V.*, 750 S.W.2d 762 (Tex.1988), in which the Texas Supreme Court allowed blood-test evidence to disprove the paternity of the presumed father in a Chapter 13 suit brought by the mother against another man she alleged was the biological father of her child. In *S.C.V.*, Justice Spears stated that § 12.06 did not apply because the petitioner mother had not joined the presumed father as a party to the suit. In the present case, John Doe has been joined in the suit, and § 12.06(a) controls. Moreover, in *S.C.V.*, the version of § 13.01 effective at the time of trial did not exclude cases in which the child has a presumed father. Rather, it allowed a paternity suit with respect to any "child who is not the legitimate child of a man."

effect of the unambiguous limitation of § 13.01(a), asserting that Jane Doe was entitled under § 12.06(a) of the Code to rebut John Doe's presumed paternity. Section 12.06(a) provides:

> In any suit affecting the parent-child relationship, *other than a suit under Chapter 13 of this code*, a husband or wife is entitled to deny the husband's paternity of the child who is the subject of the suit and who was born or conceived during the marriage of the parties. The question of paternity under this section must be raised by an express statement denying paternity of the child in the spouse's pleadings in the suit, without regard to whether the spouse is a petitioner or respondent.

(Emphasis added). While it is clear that § 12.06(a) authorizes a husband or wife to put in issue the question of biological paternity, "[i]n any suit affecting the parent-child relationship," it is equally plain that § 12.06(a) excludes from its scope, in unambiguous language, "a suit under Chapter 13 of this code," which includes the State's present suit against Lavan under § 13.01(a).

Contending against the unambiguous language of the exclusion in § 12.06(a), the State refers again to the "legislative history" mentioned earlier. For the reasons given in our discussion of § 13.01(a) above, we reject this attempt to vary the unambiguous language of a statute.

### ADVISORY OPINIONS IN DIVORCE ACTIONS

▮ The State argues that giving literal meaning and effect to the words of § 13.01(a), limiting the right of action to instances where a child has no presumed father, requires district courts, in divorce cases, to render advisory opinions. We are not sure we understand the State's theory behind this contention. The substance of it is stated, apparently, in the following passage from State's brief:

> If both parties to an action for divorce agree that a child is neither the biological offspring nor adoptive child of the husband, where is the "controversy" necessary for jurisdiction in any court under the Texas Constitution? ... Texas Courts still cannot determine hypothetical [or] contingent situations or decide questions which are not essential to the resolution of an actual controversy, even if future adjudication will be necessary....

We assume the State's theory to be as follows. The effect of § 12.06(a), as we have interpreted it to exclude cases in which a child has a presumed father, requires a husband and wife to litigate in their divorce action any question of the husband's biological paternity, for under that interpretation they may not do so later in a suit "under Chapter 13 of this code" against a person alleged to be a biological father. But in the divorce action, the husband and wife may agree that the husband is not the biological father, and the absence of a real controversy on that point would require an advisory opinion which is beyond the power of a court.

We reject the theory. A stipulation as to an issuable fact material to a cause of action for divorce does not render advisory the court's judgment on the cause of action itself. "The controversy may exist though the plaintiff's claim be uncontested, as on default judgment, or incontestable on the facts, as in a case submitted upon agreed facts." 1 McDonald, Texas Civil Practice § 2.01, at 130 (1981).

### A GENUINE ISSUE OF MATERIAL FACT THAT PRECLUDED SUMMARY JUDGMENT

▮ The State contends the trial court erred because the summary-judgment record showed a genuine issue of material fact concerning whether John Doe could in fact be X's biological father. We assume for the purpose of discussion that Lavan is the biological father and that John could not be for want of "access" in the relevant time period. Nevertheless, the present cause of action brought by the State and Jane Doe against Lavan is purely a creation of statute. Both the right of action claimed and the remedies requested exist now only by virtue of § 13.01(a) of the

Code. In such causes of action, "the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084, 1087 (1926). The right of action under § 13.01(a) is expressly limited to cases in which the child "has no presumed father." Because X *has* a presumed father, the action against Lavan is determinable *as a matter of law* on that basis alone, rendering immaterial the assumed fact that John Doe could not be X's biological father.

## THE EFFECT OF THE DOES' DIVORCE DECREE

█ The State next asserts that the summary judgment is erroneous because the trial court misconstrued the divorce decree that dissolved the marriage between Jane and John Doe. The decree provided expressly for the custody and support of child Y, but omitted entirely to mention child X. The State imputes to this omission an *implied adjudication* that John was not X's biological father, negating therefore the legal presumption that he was the father. This is merely an argument from silence. The summary-judgment record includes the pleadings in the divorce suit between Jane and John Doe, but these do not mention X. Consequently, there is no basis for imputing to the resulting decree an adjudication that John is not X's biological father. The divorce decree could not possibly have adjudicated a matter not put in controversy by the pleadings expressly, or by necessary implication arising from the pleadings. *Groesbeeck v. Crow*, 91 Tex. 74, 40 S.W. 1028, 1029–30 (1897); *Freeman v. McAninch*, 87 Tex. 132, 27 S.W. 97, 99 (1894).

█ Moreover, the State and Jane cannot make the contention in question because of the content of their pleadings in the present case, which include an averment that John Doe is "[t]he presumptive legal father of [X] because he was married to the mother of the child at the time the child was conceived and/or born" and John Doe's sworn statement, upon which the State opposed summary judgment, which declared to the same effect. Parties are restricted on appeal to the theory on which a case was tried. *Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex.1978); *Safety Casualty Co. v. Wright*, 138 Tex. 492, 160 S.W.2d 238, 245 (1942). A litigant cannot assume an attitude on appeal contrary to that taken in the trial court. *Vaugn Bldg. Corp. v. Austin Co.*, 620 S.W.2d 678, 683 (Tex.Civ. App.1981), *aff'd*, 643 S.W.2d 113 (Tex.1982); *Safety Casualty Co.*, 160 S.W.2d at 245. Allegations by the State and Jane in their pleadings are conclusive against them. *Walker v. Burks*, 48 Tex. 206, 209 (1877); *Dayle L. Smith Oil Co. v. Griffin*, 104 S.W.2d 167, 170–71 (Tex.Civ.App.1937, writ dism'd); *Blankenship v. County of Galveston*, 775 S.W.2d 439, 440–41 (Tex.App. 1989, no writ). We hold accordingly.

## RES JUDICATA

█ The State contends finally that we must reverse the summary judgment in the present case because neither X nor the Attorney General was a party in the divorce suit between Jane and John Doe. Consequently, the State argues, they cannot be "barred" by the divorce decree. We believe the State uses the word "barred" in the sense of the estoppel aspect of res judicata. It is true, of course, that one is not ordinarily estopped by the judgment rendered in a suit in which he was not a party or in privity with a party concerning a matter adjudicated. We are not sure, nevertheless, why the State contends this doctrine results in an erroneous summary judgment in the present case.

Apparently, the State's theory challenges the proposition that John Doe is presumed by operation of law to be X's biological father. But this presumption does not arise because of a previous *adjudication* in the divorce suit, from which the consequences of res judicata result. The presumption arises instead from what § 12.02(a)(1) of the Code ordains: "A man is presumed to be the biological father of a child if ... he and the child's biological mother are ... married to each other and the child is born during the marriage...." This presumption of law arises and exists regardless of whether a divorce occurs be-

tween the husband and wife. The judgment in the present case simply gives legal effect to the statutory presumption in a cause of action created by § 13.01(a) of the Code, which limits the cause of action to establish paternity to those instances in which a child has no presumed father. It does not purport to give effect to a previous judgment.

Finding no error as assigned, we affirm the judgment below.

GAMMAGE, J., not participating.