

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

March 13, 1992

Honorable Chet Brooks
Chairman
Committee on Health and
  Human Services
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. DM-97

Re: Whether Texas' procedure whereby a man voluntarily can establish paternity of a child born out of wedlock "legitimates" the child  (RQ-178)

Dear Senator Brooks:

Prior to its amendment in 1986, section 309(a) of the United States Immigration and Nationality Act of 1952 provided that a child born outside of wedlock outside of the United States to a father who is a citizen of the United States and a noncitizen mother was deemed a citizen of the United States from birth if, before the child reached age twenty-one, the child's paternity was established "by legitimation," according to the law of the child's or the father's residence or domicile.[1] We understand you to ask whether a child whose paternity is established

---

[1]Section 309(a) of the Immigration and Nationality Act appears at section 1409(a) of title 8 of the United States Code. In 1986, Congress amended section 309(a) so that a child born outside of wedlock is deemed a citizen of the United States from the time of birth if, before the child reaches the age of eighteen,

> a blood relationship between the child and the [child's] father is established by clear and convincing evidence, provided the father had the nationality of the United States at the time of the child's birth, the father unless deceased has agreed in writing to provide financial support for the child until such child reaches the age of eighteen years and if, while such child is under the age of eighteen years, (1) such child is legitimated under the law of the child's residence or domicile, or (2) the father acknowledges paternity of the child in writing under oath, or (3) paternity of the child is established by adjudication of a competent court.

Immigration & Nationality Act Amends. of 1986, Pub. L. 99-653, § 13(b), 100 Stat. 3657 (1986). We are informed that a child born before the effective date of the 1986 amendments must become a citizen pursuant to the pre-1986 version of section 309(a) because that section deems the child a citizen from

under Texas law pursuant to sections 13.21 through 13.24 of the Family Code, as amended in 1989, is deemed a United States citizen pursuant to the pre-1986 version of section 309(a) of the Immigration and Nationality Act. While this office cannot determine the citizenship of an individual under federal law, we can explain the purpose as well as the effect, if any, of the 1989 amendments to sections 13.21 through 13.24 of the Family Code on the status and rights of a child under Texas law.

Until 1989, Texas law provided a procedure for "voluntary legitimation" in sections 13.21 through 13.24 of the Family Code. Using Texas' statutory procedure for "voluntary legitimation," a man who was a citizen of the United States and a resident of Texas, could, by voluntarily executing a proper statement of paternity and having a court designate him to be the father, legitimate his child born out of wedlock outside of the United States to an alien woman. After legitimation under the pre-1989 version of sections 13.21 through 13.24 of the Family Code, the child was entitled to the same rights under Texas law as a child born in wedlock. *See* Fam. Code §§ 11.01(3) (defining "[p]arent" to include man who has been adjudicated to be child's biological father), 11.01(4) (defining "[p]arent-child relationship"), 12.04 (listing *rights, privileges, duties, and powers existing between parent and child*). In 1989, however, Texas amended sections 13.21 through 13.24 of the Family Code to provide a procedure for "voluntary paternity,"[2] instead of "voluntary legitimation." *By changing the name of the procedure, the Texas statute*

---

(footnote continued)

birth if the terms of the statute are satisfied. Thus, the issue you raise will be pertinent until the year 2007, when children born in 1986 will turn twenty-one years of age.

[2]Section 13.21 *establishes a procedure for voluntary adjudication of paternity in cases in which* a man claiming to be the biological father of a child who has no presumed father has executed a statement of paternity. A voluntary paternity suit is "voluntary" only in the sense that the alleged father voluntarily writes and signs a statement of paternity. Smith, *Title 2: Commentary*, 8 TEX. TECH. L. REV. 19, 68 (1976) (Texas Family Code Symposium Supplement). The statement of paternity, which must be attached to the petition for adjudication of paternity, must comply with the requirements articulated in section 13.22 of the Family Code. *But see* Fam. Code § 13.24 (validating a statement *acknowledging paternity or an obligation to support a child if the alleged biological father signed the* statement prior to January 1, 1974, although the statement does not comply with section 13.22 of the Family Code, and is not filed with the Texas Department of Human Services or with the court). A statement of paternity executed in compliance with section 13.22 constitutes *prima facie* evidence that the child is the child of the man executing the statement and that he has an obligation to support the child. *Id.* § 13.23(a); *see also* Smith, *supra* at 73. *See generally* Doyle, Comment, *Voluntary Legitimation Rights of Unwed Fathers in Texas*, 20 HOUS. L. REV. 1157 (1983).

differs from the pre-1986 version of section 309(a) of the Immigration and Nationality Act, which requires "legitimation."

The Texas Legislature amended sections 13.21 through 13.24 of the Family Code, as well as other sections of the Family Code, Human Resources Code, Probate Code, and civil statutes in Senate Bill 401, Acts 1989, 71st Leg., ch. 375, § 17, at 1481, to remove all references to legitimacy and illegitimacy. Tapes of a public hearing conducted regarding Senate Bill 401 reveal that, by removing references to legitimacy and illegitimacy throughout Texas law, the legislature merely intended to eradicate what it considered an "odious term" that wrongly stigmatized the child of an "illicit union." Hearings on S.B. 401 Before the Senate Jurisprudence Comm., 71st Leg. (Mar. 14, 1989) (testimony of Harry Tindell, drafter of S.B. 401); *see also id.* (testimony of Steven McNally, expert witness, stating that word change was nonsubstantive).

The present voluntary paternity procedure is one method by which a parent-child relationship may be established. Fam. Code § 12.01(a). According to the Family Code, once parenthood has been established by the voluntary paternity procedure or by any other method listed in section 12.01(a), the parent-child relationship "extends equally to every child and parent regardless of the marital status of the parents." *Id.* § 12.01(b). Thus, once a court adjudicates the man to be a parent of the child, *see id.* § 13.21, the man and child have a legal parent-child relationship "incident to which the rights, privileges, duties, and powers as provided by Section 12.04 of this code are conferred or imposed."[3] *Id.* § 11.01(4).

---

[3]Section 12.04 of the Family Code states:

Except as otherwise provided by judicial order or by an affidavit of relinquishment of parental rights executed under Section 15.03 of this code, the parent of a child has the following rights, privileges, duties, and powers:

(1)    the right to have physical possession, to direct the moral and religious training, and to establish the legal domicile of the child;

(2)    the duty of care, control, protection, and reasonable discipline of the child;

(3)    the duty to support the child, including providing the child with clothing, food, shelter, medical care, and education;

(4)    the duty, except when a guardian of the child's estate has been appointed, to manage the estate of the child, including a power

Although Senate Bill 401 changed the name of the procedure from "voluntary legitimation" to "voluntary paternity," the bill did not change the procedure involved, with the exception of amending section 13.21 to permit governmental entities other than the Texas Department of Human Services to file a petition for adjudication of paternity. Moreover, both the previous "voluntary legitimation" procedure and the current "voluntary paternity" procedure produce the same result: the establishment of a parent-child relationship. The legislature did not alter the substance of rights, privileges, duties, and powers incident to the parent-child relationship listed in section 12.04 in 1989 when it changed the name of the procedure from "voluntary legitimation" to "voluntary paternity." Clearly, then, a child born out of wedlock whose paternity has been established pursuant to the voluntary paternity procedure set forth in sections 13.21 through 13.24 of the Family Code is entitled to the same parent-child relationship, and therefore the same rights under Texas law, as a child born in wedlock.[4] In our opinion, the 1989 amendments to sections 13.21 through 13.24 made no substantive change, and the change in terminology thus should not

---

(footnote continued)

as an agent of the child to act in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government;

(5)    the right to the services and earnings of the child;

(6)    the power to consent to marriage, to enlistment in the armed forces of the United States, and to medical, psychiatric, and surgical treatment;

(7)    the power to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

(8)    the power to receive and give receipt for payments for the support of the child and to hold or disburse any funds for the benefit of the child;

(9)    the right to inherit from and through the child; and

(10)    any other right, privilege, duty, or power existing between a parent and child by virtue of law.

[4]For interesting cases regarding chapter 13 of the Family Code, *see State v. Lavan*, 802 S.W.2d 73, 75 n.1 (Tex. App.--Austin 1990), *writ granted*, 34 Tex. Sup. Ct. J. 687 (Nov. 19, 1991); *Texas Dep't of Human Resources v. Hernandez*, 595 S.W.2d 189 (Tex. Civ. App.--Corpus Christi 1980, writ ref'd n.r.e.) (overruled on other grounds in *In Interest of J.A.M.*, 631 S.W.2d 730 (Tex. 1982)).

affect the way in which the federal government applies the provisions in determining citizenship of children born out of wedlock under the Immigration and Nationality Act.

## SUMMARY

The procedure for establishing "voluntary paternity" under sections 13.21 through 13.24 of the Family Code is essentially the same as the procedure for "voluntary legitimation" under the pre-1989 version of sections 13.21 through 13.24, and both procedures produce the same result. A child born out of wedlock whose paternity has been established pursuant to sections 13.21 through 13.24 of the Family Code is entitled to the same parent-child relationship and the same rights under Texas law as a child born in wedlock.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kym Oltrogge
Assistant Attorney General