**Opinion issued May 12, 2026**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-26-00100-CV

—————————————

## IN THE INTEREST OF N. L. S. AND E. J. C., CHILDREN

———

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 114085-F**

———

## O P I N I O N

In this case of first impression, we consider whether the mere filing of a petition to reinstate one's parental rights prohibits a managing conservator—here, the Department of Family and Protective Services ("DFPS")—from entering an adoption placement agreement for children until after the petition is decided.

Because the plain language of the statutes involved do not provide for such a prohibition, we affirm the trial court's judgment.

## Background

Mother is the biological parent of N.L.S. (age 10) and E.J.C. (age 4). On March 31, 2023, the trial court terminated Mother's and Father's parental rights and named DFPS the managing conservator of the children. This Court affirmed the trial court's termination order, holding that Mother had endangered the children and that termination of her parental rights was in their best interest. *In re N.L.S.*, 716 S.W.3d 612, 645–55 (Tex. App.—Houston [1st Dist.] 2023, *rev'd in part*, 715 S.W.3d 760 (Tex. 2025).[1]

In May 2025, Mother first notified DFPS of her intention to file a petition for reinstatement of parental rights. Also in May 2025, the children began residing with their prospective adoptive parents, resulting in a foster placement that began on October 21, 2025.

In August 2025, the prospective adoptive parents signed a notice-of-intent-to-adopt. The children, however, were not eligible for adoption at the time because Father's appeal was still pending.

---

[1] The Texas Supreme Court reversed this Court's opinion as it related to Father only.

On October 6, 2025, Mother again notified DFPS that she intended to file a petition for reinstatement, and on November 19, 2025, she did so after Father's appeal became final. In her petition, Mother alleged that over two years had passed since her parental rights were terminated and that the children had not been adopted and were not the subject of an adoption placement agreement. Mother also alleged that she had "been in recovery from substance abuse for over 2 years and 6 months" and that she had maintained a "stable home" and "gainful employment." She requested that the trial court "[o]rder the reinstatement of all [her] legal rights, powers, privileges, immunities, duties and obligations . . . regarding the children, including with respect to custody, care, control, and support[.]"

On December 15, the children's prospective adoptive parents signed an intent-to-adopt form. And on December 22, 2025, DFPS entered adoption placement agreements with the prospective adoptive parents.

On January 20, 2026, the trial court held a hearing on Mother's petition for reinstatement. At the close of the evidence, DFPS moved for directed verdict, arguing that Mother "has failed to meet [her] burden [to show] that at the time of [the] hearing there was not an adoption placement agreement in place." Shortly thereafter, on January 22, 2026, the trial court denied Mother's petition for reinstatement. In so ruling, the trial court found "that the children made subject of this suit [were] subject to an adoption placement agreement."

3

This appeal followed.

## Statutory Interpretation

In a single issue on appeal, Mother contends that the trial court erred in denying her petition for reinstatement because the court found that the children in question were subject to an adoption placement agreement *at the time of hearing.* *See* TEX. FAM. CODE § 161.303. According to Mother, the trial court used the wrong time period. She argues that the determination of whether there was an adoption placement agreement in place should have been made *as of the time that she filed her petition. See* TEX. FAM. CODE § 161.302. To address this issue, we must interpret the statutes involved.

## Standard of Review and Applicable Law

Complaints involving the interpretation of a statute are questions of law to which we apply the de novo standard of review. *See Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 647 (Tex. 2020). When we construe a statute, our primary objective is to give effect to the Legislature's intent as expressed in the statute's plain language. *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007). We begin with the statute's text because that is the truest and most reliable guide to the Legislature's intent. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex.

4

2006).[2]  "If a statute is clear and unambiguous, we apply its words according to their common meaning without resort to rules of construction or extrinsic aids." *In re Estate of Nash*, 220 S.W.3d at 917.

It is not the role of an appellate court to amend statutes and add words that are not there. *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 435 (Tex. 2023).  And judicial policy preferences should play no role in statutory interpretation. *McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 918 (Tex. 2023).  "W[e] thus presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."  *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

**Applicable Statutes**

Two different provisions of the Family Code are involved here.

First, section 161.302 provides that a former parent whose parental rights were involuntarily terminated "*may file a petition*" for the reinstatement of those rights only if:

---

[2]  *See also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("[W]hen we stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be."); *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920) ("Courts must take statutes as they find them . . . . [T]hey must find [the statute's] intent in its language, and not elsewhere.").

(1) The termination of parental rights resulted from a suit filed by the department;

(2) At least two years have passed since the issuance of the order terminating the former parent's parental rights and an appeal of the order is not pending;

(3) The child has not been adopted;

(4) *The child is not the subject of an adoption placement agreement*; and

(5) The petitioner has provided the notice required by Subsection (d), if the petitioner is the former parent whose parental rights are sought to be reinstated.

Tex. Fam. Code § 161.302(a)(4), (b) (emphasis added).

Next, section 161.303(a)–(c) states that:

(a) A reinstatement hearing under this subchapter must be held not later than the 60th day after the date the petition is filed.

(b) The petitioner has the burden of proof in the hearing, and each party may call witnesses.

(c) The court *may grant the petition* and order the reinstatement of the former parent's parental rights *only if the court finds* by a preponderance of the evidence that:

(1) the reinstatement of parental rights is in the child's best interests;

(2) at least two years have passed since issuance of the order terminating parental rights and an appeal of the order is not pending;

(3) *the child has not been adopted and is not the subject of an adoption placement agreement*;

6

(4) if the child is 12 years of age or older, the child consents to the reinstatement and desires to reside with the parent;

(5) the former parent has remedied the conditions that were grounds for rendering the order terminating parental rights; and

(6) the former parent is willing and has the capability to perform parental duties as provided in Section 151.001, including maintaining the health, safety, and welfare of the child.

TEX. FAM. CODE § 161.303(a)–(c) (emphasis added).

**Analysis**

There is no dispute here that when Mother filed her petition for reinstatement on November 19, 2025—there was no adoption placement agreement in place. There is also no dispute that when the trial court conducted the hearing and denied Mother's petition on January 20, 2026—there *was* an adoption placement agreement in place.

Mother contends that the statutory framework of sections 161.302 and 161.303 creates "a temporal disconnect" because she may be eligible for reinstatement at the time of filing—but still be unable to carry her burden of proof at the reinstatement hearing because an intervening adoption placement agreement was subsequently entered into between DFPS and prospective adoptive parents. Thus, Mother argues that these statutes should be read as one and her eligibility for reinstatement should be determined as of the date that her petition for reinstatement was filed—not the date of the reinstatement hearing.

7

Mother's position ignores the plain language of these statutes. The clear statutory text chosen by the Legislature shows that they each pertain to different aspects of the reinstatement process with separate sets of requirements—filing requirements for the petition in section 161.302(b) and proof requirements for trial in section 161.303(c). *See* TEX. FAM. CODE §§ 161.302(a)(4), (b); 161.303(c). To read the mandatory filing requirements in section 161.302(b) into the proof requirements for trial statute would require us to judicially amend section 161.303(c), which is not our role. *See Mouton v. Houston Indep. Sch. Dist.*, No 01-22-00205-CV, 2023 WL 4065602, at *4 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (mem. op).

Indeed, our sister court in Houston has already recognized the separate nature of these statutes. *See In re S.H.V.V.*, No. 14-23-00807-CV, 2025 WL 1765511 (Tex. App.—Houston [14th Dist.] June 26, 2025, no pet.) (mem. op.). In *S.H.V.V.*, the Fourteenth Court of Appeals held that section 161.302(b) sets forth "mandatory ('may be filed . . . only if . . .) [filing] requirement[s] imposed on the party seeking parental reinstatement when filing the lawsuit." *Id.* at *5, 7. And that section 161.303(c) sets forth mandatory proof requirements that the petitioner must show at the hearing—and "a trial court cannot grant the petition in the absence of [such] evidence." *Id.* at *6 ("[Petitioner] should expect his case to be dismissed at his hearing on the merits if the section 161.303(c)[] requirement[s] [are] not satisfied.").

We agree with this textualist reading of these statutes. *See Ford Motor Co. v. Parks*, 691 S.W.3d 475, 482 n.36 (Tex. 2024) ("[W]e are a 'text-centric Court.'" (citation omitted)). Section 161.302(b) sets forth the mandatory filing requirements for a petition for reinstatement of parental rights and section 161.303(c) sets forth the separate proof requirements that the petitioner must show at the reinstatement hearing in order for the petition to be granted. *See* TEX. FAM. CODE §§ 161.302(a)(4), (b); 161.303(c).

Mother also asks us to read into section 161.303(c) a statutory stay of any adoption proceedings while her petition was pending. Again, there is no textual basis in section 161.303(c), or section 161.302, for such reading. We would have to add words to the statute that simply are not there—and that we may not do. *See Urban Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 52 (Tex. 2014). Additionally, departing from the clear statutory text, as Mother advocates, would cut against the prompt resolution of the permanency sought for children in these situations. As the trial court pointed out at the hearing,

> What if a parent files a notice and then doesn't file a petition? What if a parent files a notice, then files a petition, but then doesn't show up for the petition [hearing]? [DFPS's] just supposed to sit on their hands and wait? I don't think that's the intent of the statute.

To continue with the trial court's reasoning—What if the parent whose rights were terminated files a petition, stalls a prospective adoption, and then fails to prevail

9

on her petition? The uncertainty of the children's situation has then been extended for at least a few months, if not longer should the former parent decide to appeal.

Accordingly, we hold that Family Code section 161.303(c)(3) unambiguously requires a former parent to prove, at the time of the reinstatement hearing, that the child is not the subject of an adoption placement agreement. Because the uncontroverted evidence at the reinstatement hearing here proved that N.L.S. and E.J.C. *were* the subject of such an adoption placement agreement, Mother failed to carry her burden of proof under section 161.303. We overrule Mother's sole issue on appeal.

## Conclusion

We therefore affirm the trial court's judgment.


Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.